STATE of Missouri, Respondent,

v.

Lucky Vance STANCLIFF, Appellant.

No. 55349.

Supreme Court of Missouri,
Division No. 1.

April 12, 1971.

Motion for Rehearing or Transfer to Court
En Banc Denied May 10, 1971.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Lewis E. Pierce, Robert G. Duncan, David W. Russell, Pierce, Duncan, Hill & Russell, Kansas City, for appellant.

BARDGETT, Judge.

Lucky Vance Stancliff was convicted by a jury of murder in the first degree; his punishment was assessed at life imprisonment, and sentence and judgment were rendered accordingly.

Defendant's first point is that "the verdict was not supported by sufficient and substantial evidence, in that there was no evidence that the appellant participated in the homicide." The evidence will be viewed in the light most favorable to the verdict.

The deceased, Richard Ferguson, aged 18, a service station attendant, was found dead at about 1:20 to 1:30 a. m. on the morning of March 15, 1969, on the service station property about 100 feet from the building. He had been shot at least ten times.

The scene of the crime was a Texaco Service Station in Lawrence County, Missouri, located about ¼ mile southwest of the intersection of I 44 and Route O, a north-south road. This intersection is known as the "Halltown exit" off I 44. Route PP is a north-south road intersecting I 44 about 3 to 3½ miles east of Route O. Highway 66 goes under I 44 about ½ mile west of Route O and there is an exit ramp off I 44 at this point. Defendant and one Terry Cobb lived in separate residences in Mount Vernon. Mt. Vernon is about 10 to 12 miles southwest of Route O on I 44. I 44 is the shortest route from Route O to Mt. Vernon. One can reach Mt. Vernon in about 15 to 20 minutes via Route O by using Halltown exit. One can also reach Mt. Vernon, by exiting at Halltown exit, Route O, and going north to Route 266, west on Route 266 to Route 66, west on Route 66 to Route 39, and then south.

The deceased had relieved Ira Madsen as station attendant about 10:00 p. m., March 14, 1969, and at that time there was $75 to $100 in the cash register. Richard Ferguson was last seen alive while on duty at the Texaco station about 11:50 p. m., March 14, by witness Vickie Boatright and two other girls who knew Ferguson and had gone by to visit with him.

Witness Brazeal, an off-duty employee of the same station, arrived on the scene at 1:20 to 1:30 a. m. The deceased, Rich-

ard Ferguson, was not in sight. The cash register was open and the money was gone. Brazeal looked for Ferguson but could not find him. He called the owner and told him Ferguson was not there. Brazeal then went outside the station and found Ferguson dead on the ground about 100 feet from the station. There was other evidence from which the jury could find that about $160 was missing from the station.

Deputy sheriff Flannigan arrived about 1:45 a. m. and found six .25 caliber spent shells and one .25 caliber slug in the back room of the station. Deputy sheriff McDaniel found six .22 caliber long rifle spent shells and one .32 caliber spent shell around Ferguson's body and two .22 long rifle spent shells beside the station. The .22 and .25 caliber shells and the .25 caliber slug were eventually turned over to witness Kenneth Miller, a ballistics expert with the Missouri Highway Patrol.

On Sunday, March 16, sheriff Quade searched for weapons south along Route O and found a .25 caliber Browning automatic pistol about 1½ miles south of the Texaco station on the west side of Route O. Witness Ricky Richardson assisted in the search for weapons and found a clip from a .25 caliber along the west side of Route O about 100 feet from the .25 caliber gun. On the same day witness Bill Kuehl found a .22 caliber Sturm Ruger automatic pistol with one live long rifle shell in the chamber about 10 feet west of Route O between 1½ and 2 miles south of the Texaco station. The guns, clip and live shell were also eventually turned over to Kenneth Miller.

On autopsy Dr. David Gorelich found ten entrance and five exit bullet wounds in the body of the deceased. He found four complete .25 caliber slugs in the deceased—one in the right side of the face, one in the left side of the face, one in the left chest and one in the left buttock. The one in the left chest had penetrated the heart. Four bullet fragments were found in the deceased's head which tore up his brain. Ferguson had been shot in the heart before being shot in the head and was still alive when he was shot in the head. These bullets and bullet fragments were also turned over to Kenneth Miller.

Deputy sheriffs Stockton and Dunton went to the home of one Terry Cobb in Mt. Vernon on Sunday, March 16, 1969. While there Dunton picked up a quantity of spent .22 and .25 caliber shells from Cobb's back yard and these were also turned over to Kenneth Miller.

Kenneth Miller testified that he is employed by the Missouri State Highway Patrol in Jefferson City and assigned to the technical laboratory to perform firearms examinations and other duties. He qualified as a ballistics and firearms expert. After describing the manner by which ballistics tests and examinations are done in order to determine whether a particular bullet or shell was fired with a particular gun, Miller testified that two of the .22 caliber bullet fragments found in deceased's head contained signatures—identifying data—which compared in likeness to the test bullets from the .22 caliber Sturm Ruger. The other two fragments were devoid of identifying marks. The witness stated that six of the eight .22 caliber spent shells found at the station were fired from this same .22 caliber handgun. These six shells also bore the same headstamp as the one live shell found in the chamber of the gun by witness Kuehl. Of the .22 caliber shells found in Cobb's backyard by officer Dunton, Mr. Miller testified that 58 of the 104 found were fired from this same .22 caliber Sturm Ruger. The remainder were fired from three other .22 caliber weapons.

The four .25 caliber bullets taken from the body of the deceased, the single expended .25 caliber slug found at the Texaco station, the six .25 caliber shell casings found in the back room of the Texaco station, and the five .25 caliber shell

casings found in Cobb's backyard were, in the opinion of witness Miller, all fired from the same gun—the .25 caliber Browning automatic found by sheriff Quade along Route O on March 16, 1969.

Witness Rickey Ferguson, deceased's brother, was the attendant at the Deep Rock service station at I 44 and Route PP on the night of March 14. Defendant and Cobb came to this station about midnight and filled up the gas tank. Shirley Stancliff, the former wife of defendant, together with the defendant and Cobb got into Shirley's car and the three drove back and forth in front of the Deep Rock station. Shirley then drove onto the next-door restaurant lot and stopped. Defendant and Cobb got out of her car and into Cobb's car. Cobb drove west on I 44. This was between 12:30 and 12:45 a. m. on March 15, 1969. Shirley followed them going down the ramp "real fast" westbound on I 44. She passed them before reaching Route O, Halltown exit, continued west and stopped on I 44 about one mile west of Route O, near where Highway 66 intersects I 44 waiting for them. Shirley remained stopped for two or three minutes. The defendant and Cobb did not pass her. Shirley then proceeded a bit further west to the Chesapeake exit and took Route 39 over to Highway 66 to a restaurant. She saw a black Ford there, looked into the restaurant, did not see defendant or Cobb, so she drove to defendant's house in Mt. Vernon. She waited there for 15 or 20 minutes. Defendant was not there so she drove to Cobb's house in Mt. Vernon arriving there about 1:30 or 2:00 a. m. Defendant and Cobb were there. She went home and defendant went home.

Prior to this night of March 14, Shirley had been to Cobb's house with defendant. Defendant gave her a .22 caliber pistol that she fired at trees, poles or anything for a target in Cobb's backyard. Shirley identified state's exhibit 1, the .22 caliber Sturm Ruger automatic pistol as being one that looked like the one defendant gave her to shoot; that it was the same type and it had the same type long barrel and long handle. It was a .22 automatic that she fired but she could not positively identify state's exhibit 1 as being the gun the defendant let her use at Cobb's house. On cross-examination by defendant's attorney, the following sequence occurred:

"Q. While you were married to Vance, he didn't even own a gun, did he?

A. No. A .22 rifle.

MR. FAULKNER: I object to whether he owned a gun while they were married.

MR. PIERCE: Well, Your Honor, the State put on testimony to the effect she shot a gun while she was married to him.

MR. FAULKNER: No, not—I didn't put on testimony they were married at the time she shot a gun.

THE COURT: The objection will be sustained.

Q. (By Mr. Pierce) During any time, either during the time when you were married to Vance or the time you are talking about shooting this gun, did he ever own a gun?

A. No.

Q. All right. Did he ever own a .22 pistol like this?

A. I don't know if he owned one or not but he had one that night."

The state relies upon circumstantial evidence to implicate defendant in the robbery and homicide. The rule is that the circumstances to warrant a conviction must be consistent with each other, must tend to prove guilt, and not only must be consistent with the hypothesis of the defendant's guilt, but must be inconsistent with every other reasonable hypothesis, including the hypothesis of his innocence. State v. Paige, Mo., 446 S.W.2d 798. It is inherent in the nature of a circumstantial evidence case that there will almost always

exist a possibility of innocence and the evidence need not be so strong as to absolutely exclude this possibility in order to provide a basis for conviction.

■ The law is well settled that evidence is relevant to show that the accused owned, possessed or had access to tools, implements, or any articles with which the particular crime was or might have been committed, and that he owned or had such weapons in his possession prior to or shortly after the commission of the crime, State v. Francis, 330 Mo. 1205, 52 S.W.2d 552, 554; State v. Lett, 85 Mo. 52, 55; at least where the accused is identified as having been at or near the scene of the crime at about the time of its commission, 22A C.J.S. Criminal Law § 611, p. 418; State v. Montgomery, 175 Kan. 176, 261 P.2d 1009; Lipscomb v. State, 162 Neb. 417, 76 N.W.2d 399; State v. Miller, Mo., 368 S.W.2d 353, 360.

In State v. Johnson, Mo., 286 S.W.2d 787, this court held that the testimony of a witness that the exhibit weapon, a .38 caliber Smith and Wesson, "looked 'very much' like" the gun used in the holdup and it was "very similar" was sufficient to warrant its admission into evidence.

■ In State v. Kern, Mo., 447 S.W.2d 571, this court held that testimony that the knife offered in evidence "looks like the weapon I found" and the victim's testimony that "It looks familiar" and he believed he saw it in defendant's hand was sufficient to support its introduction into evidence. The identification of a weapon allegedly used in committing a crime need not be wholly unqualified in order to make the instrument itself admissible. State v. Kern, supra, l. c. 575. The weight to be given to the identification was for the jury. State v. Johnson, supra, 286 S.W.2d 791.

The .22 caliber Sturm Ruger offered in evidence and identified by witness Shirley Stancliff as set forth supra was shown by the testimony of the ballistics expert Miller

to be one of the weapons by which Ferguson was killed and also the gun which fired fifty-eight .22 caliber bullets in Cobb's backyard. Shirley was with defendant and Cobb for a period of time during the night of the instant crime shortly before midnight on March 14 to 12:30 or 12:45 a. m., March 15, and had an opportunity to see what defendant had in his possession. After questions by defense counsel which serially moved through the time she was married to defendant and through the occasion when she fired a .22 automatic at Cobb's house which defendant gave her, she was asked, "All right. Did he ever own a .22 pistol like this" to which she answered, "I don't know if he owned one or not *but he had one that night*." (Emphasis ours.) Defendant and Cobb were seen by Shirley driving west on I 44 close to and just east of Halltown exit, Route O, which exit would be used to go to the Texaco station during the short period of time in which the robbery and homicide had to have occurred, and then seen together again at about 1:30 a. m. at Cobb's house.

We hold that there was sufficient circumstantial evidence from which the jury could find that the .22 caliber Sturm Ruger in evidence was the gun that defendant had possession of and gave to Shirley to shoot in Cobb's backyard; that defendant had possession of the same gun shortly before the robbery and murder that night; that this same gun was used in the robbery and killing of Ferguson; that defendant and Cobb were near the scene of the crime at about the time of its commission and that defendant participated in the robbery and killing.

The language of State v. White, Mo., 439 S.W.2d 752, 755, quoting State v. Burton, Mo., 357 S.W.2d 927, 931, is appropriate here: " 'These circumstances are all consistent with each other and are consistent with the hypothesis of appellant's guilt of the offense for which he was charged. They are inconsistent with his innocence, and while these circumstances are not of

themselves conclusive, and they need not demonstrate an absolute impossibility of innocence, 23 C.J.S. Criminal Law § 907, p. 578, when considered together they point so clearly and satisfactorily to his guilt so as to exclude every reasonable hypothesis of innocence. We therefore conclude that the facts and circumstances shown by the evidence are sufficient, as a matter of law, if believed by the jury to induce a belief of appellant's guilt beyond a reasonable doubt.' "

In support of defendant's position that the evidence was not sufficient to support a finding of guilty, defendant cites State v. Castaldi, Mo., 386 S.W.2d 392; State v. Matticker, Mo., 22 S.W.2d 647; State v. Watson, Mo., 425 S.W.2d 123, and State v. Rogers, Mo., 380 S.W.2d 398.

State v. Castaldi, supra, was a prosecution for tampering with a motor vehicle. The evidence with respect to Castaldi was that he was "just standing there" as a bystander while another person was using an acetylene torch on an automobile body. This court held that in these circumstances mere presence at a place where a car is being cut up is not sufficient evidence upon which a jury could infer participation in a crime or that Castaldi even knew a crime was being committed. In the instant case there was sufficient evidence to support a finding that the gun used to kill Ferguson was defendant's gun; that he had possession of it prior to the robbery and murder; that he was near the scene and therefore had an opportunity to participate and from this evidence that he did participate in the crime of robbery and murder.

In State v. Matticker, supra, defendant was charged with burglary and larceny but convicted of grand larceny. The attorney general conceded that the evidence was not sufficient to support a verdict of larceny. The only circumstance having any tendency to prove that Matticker was the thief of certain shotgun shells was the fact that he had possession of a number of shells similar to those taken. The court

said, 22 S.W.2d 647, "Had it been shown that the shells appellant had in his possession were actually part of the shells taken from the clubhouse, the fact of such possession on his part soon after the larceny thereof would have been a circumstance from which the jury would have been authorized to find that appellant was the thief, provided the jury further found that appellant had failed to account for his possession of the shells in a manner consistent with his innocence." In our case there was evidence from which the jury could find the murder weapon actually belonged to the defendant.

In State v. Watson, supra, the sole evidence against defendant was that he was walking from the corner of the burglarized building and a car titled in defendant's mother was driven from the building by an unknown person. No evidence was offered connecting Watson with the man caught in the burglarized store nor connecting the car with any participants in the burglary.

This court in State v. Matha, Mo., 446 S.W.2d 829, 832, distinguished State v. Rogers, supra, and State v. Castaldi, supra, on the basis that "those defendants were not shown to have any connection with the charged crimes other than presence at the scene."

In State v. Rogers, supra, 380 S.W.2d 400, this court said, "The accused must be shown to have some substantial nexus with the commission of the crime" and that circumstantial evidence which merely showed that defendant had the opportunity to commit the crime charged without more is not sufficient to support a judgment of conviction.

In the instant case defendant was shown to have the opportunity to commit the crime by his presence very near the scene during the short time span within which it was committed. This without more is not sufficient. The substantial nexus with the commission of the instant robbery and murder is the evidence from which the jury

could find that defendant had possession of the very gun that killed Ferguson. This represents a substantial distinction from the cases cited by defendant.

Instruction No. 12 was the felony-murder-doctrine instruction. Defendant contends the court erred in giving instruction 12 because (1) the instruction did not properly set out the elements of robbery and authorized the jury to find a robbery if the taking was against the will *or* by putting in fear, and (2) the information did not specifically allege the felony-murder doctrine.

Instruction No. 12 was as follows:

"The court instructs the jury that under the law of this State every homicide which shall be committed in the perpetration of a robbery is deemed murder in the first degree. Robbery, as used in these instructions means the felonious taking of money or property of another, from his person, or in his presence, and against his will, or from his agent or employee under said circumstances, or by putting such person in fear of some immediate injury to his person, with the felonious intent to permanently deprive the owner of said money or property of the use thereof.

"The jury is instructed that if you find from the evidence beyond a reasonable doubt that Richard Ferguson was shot and killed by the defendant Lucky Vance Stancliff, at a time when the defendant either acting alone or jointly with another was robbing Richard Ferguson (bearing in mind the meaning of robbery), then such robbery, if found by you, stands in lieu of deliberation and premeditation as hereinbefore defined and under such facts, if proven beyond a reasonable doubt, the jury will find the defendant guilty of murder in the first degree, and fix his punishment in accordance with the instructions herein."

Defendant's complaint is that the portion of the instruction defining robbery as the taking by putting such person in fear of some immediate injury to his person failed to also provide that the taking be "against his will".

In State v. Goacher, Mo., 376 S.W.2d 97, 106, this court held that where the facts and circumstances shown in evidence may or may not prove a robbery (as defined in our statutes) depending upon the inferences to be drawn, and the jury is required to find the commission of a robbery if, in fact, it convicts under that instruction (felony-murder-doctrine instruction), then the term—robbery—should be defined.

■ Here the felony of robbery in the first degree was defined although the words "and against his will" were left out of the latter portion of the instruction. The ultimate question is whether this omission was prejudicial to the defendant. When instruction No. 12 is read in its entirety, is it difficult, if not impossible, to glean from it an understanding that the taking of the money from the station was anything other than against the will of the station attendant, particularly when that portion of the instruction complained of required a finding that the taking of the money be done "by putting such person in fear of some immediate injury to his person, with the felonious intent to permanently deprive the owner of said money * * *."

In State v. Goacher, supra, the court distinguished Goacher from State v. Messino, 325 Mo. 743, 30 S.W.2d 750, where a policeman was killed in the course of defendant's escape from a bank robbery and where no instruction defining robbery was given, saying there could have been no doubt in Messino as to the nature of the act, i. e., robbery. In the instant case, the same distinction holds true. Defendant's attorney, in closing argument said, "Remember, it is circumstantial at best concerning his participation in this robbery and this murder. That is all we are talking about, all we are talking about. Was he involved? Did he commit this robbery and

this murder? Did he aid in its commission?" Thus it nowhere appears that the question of whether or not a robbery had occurred was a real issue in the case. The entire record in this case clearly demonstrates that the issue was whether or not defendant participated in the robbery and murder.

Under these circumstances we hold that instruction No. 12 adequately defined robbery and the giving of the same does not constitute reversible error in this case.

The second complaint defendant has to instruction 12 is that it was error to submit the case to the jury under the "felony murder doctrine" for the reason that the information, while it charged first degree murder, did not charge said offense was committed by reason of a homicide committed in the perpetration of a robbery.

 The instant information charged defendant with murder in the first degree in conventional form. It is well settled that a prosecution for first degree murder in the perpetration of any felonies enumerated in § 559.010 may be maintained under a charge in the usual and common form, as in the instant case of a willful, deliberate and premeditated killing. State v. Smith, Mo., 310 S.W.2d 845, 848; State v. Sykes, Mo., 436 S.W.2d 32; State v. Copeland, 335 Mo. 140, 71 S.W.2d 746, 752.

Defendant acknowledges the foregoing is the law in this state but urges this court to re-evaluate the rule citing the Sixth Amendment, United States Constitution, and Art. 1, § 18(a), Constitution of Missouri 1945, V.A.M.S., both of which provide that the accused shall have the right to be informed of the nature and cause of the accusation, in the light of this court's holding in State v. Shepard, Mo., 442 S.W.2d 58.

State v. Shepard is distinguishable on its facts. It was a prosecution for attempted burglary second degree. An element of the offense is an intent "to steal or commit any crime therein." The information charged

Shepard, inter alia, with "intent to steal". The instruction on burglary second permitted a verdict of guilty if defendant had the intent "to commit some felony, or any stealing therein". Defendant contended he was not charged with intent to commit "some felony" but only with intent to steal therein, and there was no evidence from which an attempt to commit a crime other than to steal could be inferred.

The judgment is affirmed.

All of the Judges concur.