STATE of Missouri, Respondent,

v.

Willliam W. ALDERMAN, Jr., Appellant.

STATE of Missouri, Respondent,

v.

Clifford HOWARD, Appellant.

Nos. 9380, 9381.

Missouri Court of Appeals, Springfield District.

July 24, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Lowell V. Palmer, Kimberling City, for appellants.

TITUS, Chief Judge.

William Alderman, Jr. (Alderman), Clifford Howard (Howard), and Billy Ray Howard (Billy) were charged and jointly tried for second degree burglary and stealing. The jury acquitted Billy and found Alderman and Howard guilty but was unable to agree upon punishment. Following denial of the convicted defendants' motions for new trial, each was sentenced to concurrent terms of five years for stealing and eight years for burglary. Defendants filed separate appeals which have been consolidated here.

Gene Garner on March 9, 1972, operated a Conoco service station "a couple of miles" north of Crane on Highway 13. "A large pole light that burns all night" illuminated the area permitting Garner to see the station during darkness from his home located 200 yards away. Around 1:30 a. m. "some unusual noise" awakened Garner. Looking towards his place of business he saw "a Ford automobile with only one taillight . . . sitting between the pumps and the station [and] two men, one on one side of the car and one on the other, and . . . another one crawl out of the station." He telephoned Deputy Sheriff Cousins. Upon completing his summons, Garner witnessed the Ford's departure and gave chase in his own automobile. A half mile south of his residence Garner met the deputy and got into his car. They drove south beyond Crane until encountering Sheriff Barnes. Garner again switched transportation and the two vehicles proceeded northward until "the same automobile that had been at my station that night"

was sighted traveling south. The red lights on the two official vehicles were turned on and both were "pulled into the middle of the highway" in an effort to halt the Ford, but it "just went on around." Pursuit ensued and the Ford was halted; it contained the three defendants in the front seat and, in the back seat, one Coleman lantern and three Conoco batteries.

The Ford was "towed into storage and locked up at Jenkins Ford Sales." The batteries and lantern "were locked up inside the car" until removed by Deputy Cousins after he had obtained a search warrant later that day. After removal from the Ford, the lantern and batteries were put in "the storage room in the sheriff's office" where they remained until produced at trial. No one marked, labeled or tagged the lantern or the batteries. The owner of the storage garage had keys to that establishment, while the sheriff and three deputies had keys to the evidence room. From the time the lantern and batteries were removed from the Ford and the date of trial, no other "Conoco batteries [or] any other lanterns like" the ones produced as evidence had been kept in the sheriff's storage room.

On March 9, 1972, Garner had only three batteries (all Conoco brand) in stock at the service station. When defendants had been ensconced in custodia legis, the sheriff returned Garner to the station. There they discovered "the pane of the front door had been broken out" and the lantern and three batteries missing. The sheriff noticed "dust imprints like something had been moved. . . . They were about the size of the batteries and the gas lantern." When asked regarding the three Conoco battery exhibits at trial, Garner's three unobjected-to answers were: "Yes, I would say that was my battery. . . . Yes, I would say that was mine, too. . . . Yes, I would say that was my battery." When asked to identify the Coleman lantern exhibit, the unobjected-to answer of Garner was simply, "It's mine."

Defendants' defense was alibi. They testified Howard was driving the Ford when they were arrested, but before then, Billy had been let off at his uncle's house about 1 or 1:15 a. m. when Howard and Alderman started for Aurora in search of beer. Before traveling very far, Howard and Alderman recounted, they came upon a man (they did not know and could not describe) in a car (they could not identify) "parked down there" by the side of the road. The man had three Conoco batteries and a Coleman lantern for sale which Howard and Alderman purchased for $11. After the purchase and upon discovering they did not have enough gasoline to drive to Aurora, Howard and Alderman returned to the uncle's house some twenty minutes later, picked up Billy and proceeded to the place of their apprehension on Highway 13. Referring to the battery exhibits at trial, Howard was questioned on cross-examination as follows: "Q. You were driving this light colored 1961 Ford on the evening in question and which automobile these batteries were in? A. Yeah, I was driving that car that night. Q. And those batteries were in the automobile you were driving on the night in question, isn't that right? A. Right. Q. And you knew those batteries were in that automobile? A. Yes."

 In their brief upon appeal, defendants have penned two points. The second (which may, in part, be incorporated in the first point) will not be considered because it was not assigned as an error in the motion for new trial. Rule 27.20(a), V.A.M.R.; State v. Bowens, 476 S.W.2d 495, 499 [5] (Mo.1972). Moreover, the second point that the battery and lantern exhibits should have been suppressed because seized under an improper or illegal search warrant, should have been made in a motion to suppress before the commencement of the trial. Rule 33.03; State v. Jackson, 477 S.W.2d 47, 50–51 [1] (Mo. 1972). No such motion was ever made.

Both motions for new trial asseverated trial court error in allowing introduction of the three Conoco batteries into evidence because the batteries, being in no way unique or distinguishable from other like objects, were admitted "without a showing that they were held in an unbroken chain of possession . . . from the time they were allegedly removed from said automobile until such time as they were introduced into evidence."[1] The first point relied on is that "The evidence in support of the chain of possession was incomplete and insufficient in that the objects or articles passed through several hands before being produced in court and offered in evidence. The objects or articles were not tagged, labeled or marked in any way by the Deputy at the time of removing them from the automobile."

The chain of control, custody or possession requirement is to prevent alteration of or tampering with exhibits or any substitution. But it is not required that some witness must have continually kept a watch on the exhibit or retained it in his personal possession. State v. Rose, 428 S. W.2d 737, 740 [2–3] (Mo.1968). The evidence here is that the batteries and lantern found inside the Ford upon defendants' arrest were kept in the locked Ford in a storage garage until removed by the deputy and placed in the sheriff's evidence room where they remained until produced at trial. Granted that several people had keys to the garage and the evidence room, to make the batteries and lantern admissible as exhibits " '[t]he evidence need not exclude every possibility that something in the interim of [the sheriff's] possession disturbed or interfered with the exhibit. It is sufficient if the evidence shows reasonable assurance that it was the same and in the same condition.' " State v. Everett, 448 S.W.2d 873, 877 (Mo.1970). While it is true the deputy did not tag, label or mark the batteries and the lantern, and ad-

mitted his identification thereof was "on the basis of their looking like the same batteries and lantern . . . you took from this particular automobile and put in the storage room in the sheriff's office," it was held in State v. Kern, 447 S.W.2d 571, 574–575 [3, 4] (Mo.1969), testimony that the knife offered in evidence "looks like the weapon that I found [and] looks familiar" was sufficient to support its introduction into evidence. Likewise, in State v. Johnson, 286 S.W.2d 787, 791 [3, 4] (Mo. 1956), testimony that the weapon "looked like," looked 'very much' like," and was "very similar," was held sufficient to warrant its admission into evidence. Identification of an exhibit need not be wholly unqualified in order to make it admissible; the weight to be given to the identification is for the jury. State v. Stancliff, 467 S. W.2d 26, 30 [2] (Mo.1971). But be all the foregoing as it may, when the exhibit itself is susceptible to positive identification in the singular sense by those actually involved, chain of custody becomes an irrelevant issue. State v. Granberry, 484 S.W. 2d 295, 300–301 [13–14] (Mo. banc 1972). Garner's unobjected-to identification of the batteries and the lantern was enough to permit their admission, and the trial court did not err in so doing.[2] State v. Orr, 493 S.W.2d 374, 377 [11–12] (Mo.App.1973).

No allegations of error have been made respecting the sufficiency of the informations, verdicts, judgments and sentences. Rule 28.02. Nevertheless, we find the informations sufficient in form and substance, the verdicts in proper form and responsive to the informations and issues. Both Howard and Alderman were afforded allocution and the sentences and judgments are proper and responsive to the verdicts.

The judgments are affirmed.

STONE, HOGAN and BILLINGS, JJ., concur.

---

1. It should be noted that the motions for new trial do not preserve any alleged trial court error in allowing introduction of the Coleman lantern into evidence.

2. And Howard's in-court identification of the batteries as being in the automobile, would further augment the court's decision to admit them as exhibits.