**STATE of Missouri, Respondent,**

v.

**Jessie L. HOLLINS, Appellant.**

**No. KCD 26737.**

Missouri Court of Appeals, Kansas City District.

Aug. 5, 1974.

Kenneth K. Simon, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

DIXON, Chief Judge.

Appellant, Jessie L. Hollins, was tried before a jury for the crime of robbery, first degree. The evidence produced at the trial showed that on June 8, 1972, Hollins entered Lou's Pharmacy at 2200 E. 31st St., in Kansas City, Missouri, pointed a double barreled shotgun at Hosea Hayes, Jr., the manager, and demanded money. Hayes went to the cash register and handed the paper currency to Hollins. Hollins then backed toward the entrance, turned and left the store. The jury returned a verdict of guilty, but were unable to agree on the punishment. The court sentenced Hollins to 20 years in the Missouri Department of Corrections. Hollins appeals.

The first point on appeal charges error in (1) overruling defense counsel's motion to withdraw, (2) overruling defendant's motion requesting the court to appoint a "bar association attorney" to represent him, and (3) overruling defendant's motion to employ his own attorney.[1] Although the point is divided into three parts, it can and will be treated as one in this opinion, because it is basically an attack on the trial court's refusal to accede to the defendant's claimed right to choose appointed counsel and his belated request to employ counsel of his own choice.

Attorneys from the Legal Aid and Defender Society of Greater Kansas City (particularly Christopher Dye) represented Hollins from the time of his arraignment on July 18, 1972 through the trial on March 7, 1973.[2] From the record, it appears that throughout this entire period of time Hollins refused to communicate with his attorneys. He would not tell them any-

thing about the case, would not tell them whether he wished to testify, and would not intimate whether he had a criminal record. At his arraignment he conducted himself in such a manner that he had to be physically removed. When his attorneys asked him about the case, Hollins would launch into a long harangue about the history of black people in the United States. Unable to prepare a defense, and entertaining serious doubts as to Hollins' competency to proceed, defense counsel filed a motion to have Hollins mentally examined.[3] The motion was granted, the examining doctors at the Fulton State Hospital reported that Hollins was capable of proceeding, and the trial was held.

Throughout all of this time, Hollins' attorneys from the Legal Aid and Defender Society of Greater Kansas City tried to cooperate with him, maintained a continual willingness to defend Hollins and did what they thought was in Hollins' best interest. During the trial, Hollins' attorneys made numerous objections to evidence, cross-examined witnesses, and argued the motion for new trial. They acquiesced in Hollins' expressed wish not to testify and not to present any witnesses.

Although Hollins ascribes the filing of the motion for a mental examination as the source of his dissatisfaction with Dye, the record shows a totally uncooperative attitude from the beginning. This attitude predated, and was the cause of, the filing of the motion for a mental examination. From this record it is apparent that Hollins' objection was not so much directed at Dye as it was to having attorneys from the Legal Aid Society represent him.

---

1. The first motion was filed on November 22, 1972, and ruled on February 28, 1973. The reasons assigned for filing the motion were that Hollins did not wish that Dye represent him, and that Hollins had failed to cooperate with Dye in the preparation of a defense. The last two motions were filed on March 6, 1973, and March 7, 1973, respectively, and were ruled on the date filed.

2. Although the trial court denied the request of Dye to withdraw and defendant's belated

request for private counsel, the court did direct that another attorney join in the defense, and that was done. Defendant thus had representation from two lawyers at trial.

3. A motion for a continuance so that Hollins might be mentally examined was filed on October 27, 1972. The motion seeking the examination itself was filed and granted on December 6, 1972.

It is well settled that the constitutional right to counsel does not mean that the accused is entitled to any particular attorney. State v. Hamblin, 448 S.W.2d 603 (Mo.1970); Evans v. State, 467 S.W. 2d 920 (Mo.1971); State v. Williams, 419 S.W.2d 49 (Mo.1967). That the accused disagreed with advice given him does not entitle him to a change of lawyers. Evans v. State, supra. The determination of whether counsel should be permitted to withdraw lies within the sound discretion of the trial court. State v. Wilkinson, 423 S.W.2d 693 (Mo.1968); State v. Mimms, 349 S.W.2d 925 (Mo.1961). Similarly, the selection of counsel to represent defendant was within the discretion of the trial court, and a trial court does not abuse its discretion by failing to assign an accused's choice. State v. Riley, 394 S.W.2d 360 (Mo.1965); State v. Harris, 425 S.W.2d 148 (Mo.1968).

Hollins does not claim, and this record reveals, no dereliction of duty by Hollins' attorneys, no ineffective assistance of counsel, no harm resulting to Hollins from their representation. On the contrary, it reveals a continual willingness to represent Hollins and to serve his best interests. Appointed counsel performed competently and diligently in objecting to some of the State's evidence and in cross-examining some of the State's witnesses. There was neither a claim of any conflict of interest, nor a showing that any other attorney could represent Hollins in a more competent manner. From the record, it is doubtful that Hollins would have cooperated better or would have been more satisfied with any other attorney, for in an attempt to obviate the alleged personality problems between Dye and Hollins, the trial court directed another attorney from the Legal Aid Society, Mr. Gary Haggerty, to assist in the defense. Even after the trial court did this, Hollins still desired another attorney. From this record, we conclude that the trial court did not abuse its discretion in overruling counsel's motion to withdraw and defendant's motion for the appointment of a "bar association attorney" to represent him.

Hollins' motion to employ his own attorney was filed on the day of trial. At that time he produced two letters from friends he met while he was in Fulton indicating that they were going to send him some money. The court found reliance on those letters too speculative. The court pointed out that Hollins had had over six months in which to employ an attorney, had not done so; and, in the interest of giving Hollins a speedy trial, the motion was overruled.

Hollins was entitled to a fair and reasonable opportunity to secure counsel of his own choosing. However, such a right is limited to the extent that it impinges on the public's right to effective and efficient administration of justice and the rights of other defendants in criminal cases to have their cases tried. State v. Jefferies, 504 S.W.2d 6 (Mo.1974); State v. Crider, 451 S.W.2d 825 (Mo.1970). As previously noted, Hollins had six months within which to choose and employ counsel of his own choosing. This was a fair and reasonable opportunity to exercise this right, and there was no error in overruling this motion.

The second point urged is that the lower court erred in permitting the State to exhibit the sawed off shotgun to the jury and permitting it to be introduced into evidence. The contention is that there was no testimony positively connecting the gun to the defendant.

Hosea Hayes, Jr. and Zelma Williams testified concerning the shotgun. Their testimony, in relevant part, was as follows:

*Hosea Hayes, Jr.:*

Q. What kind of a weapon did he have when—

A. He had a double barreled shotgun.

Q. Big one, little one, or what?

A. Well, it looked small to me; he had it pointing in my face.

Q. Now, Mr. Hayes, I want to hand you what has been marked "State's Exhibit 1" [the shotgun], and ask you if you can identify that weapon?

A. This looks like it, because I mentioned that night that it was kind of rusty. (T.69).

\* \* \* \* \* \*

Q. (By Mr. Stigall) Would you tell this Court and jury why you feel that is the weapon?

A. Because I looked—all I could see was the barrel and his face, and I mentioned that it looked like it was rusty to me.

Q. Your best judgment, as far as you know, that is the weapon?

A. It could be; yes. (T.70).

\* \* \* \* \* \*

Q. Now, Mr. Hayes, is it a fair statement, sir, that you cannot say positively that what has been marked as State's 1 is the gun that was used that night?

A. I can say that it looks like the weapon, because I noticed it, and I noticed it looked like it was rusty. (T.76).

*Zelma Williams:*

Q. I want to hand you what has been previously identified and marked as Exhibit 1, State's Exhibit 1, and ask you if you can identify that?

A. I couldn't say positively that that was it; but it was—it looks like it, what he had was about like—I know it wasn't an ordinary pistol. (T.85).

It has been held in several recent cases that identification of an exhibit need not be wholly unqualified in order to make it admissible. State v. Alderman, 498 S.W.2d 69 (Mo.App.1973), (sheriff's deputies testified that batteries and lantern looked like those taken from the defendant's car);

State v. Stancliff, 467 S.W.2d 26 (Mo. 1971), (gun was shown to have been the murder weapon through ballistics tests; witness testified it looked like one defendant had given her to shoot when target shooting); State v. Kern, 447 S.W.2d 571 (Mo.1969), (prison inmate was stabbed and guard had found a knife in bushes near the incident; guard testified that the exhibit looked like the weapon he found; the victim testified that the exhibit looked familiar, and he believed he had seen it in defendant's hand); State v. Johnson, 286 S.W.2d 787 (Mo.1956), (witness testified that gun looked very much like the gun defendant had; characterized it as "very similar"). The weight to be given to the identification is for the jury. State v. Alderman, supra; State v. Stancliff, supra; State v. Johnson, supra. Following this line of cases, the testimony of Hosea Hayes, Jr. and Zelma Williams, made the gun admissible, the weight of its identification being for the jury.

■ The third and final point is that the lower court erred in not finding the defendant so irrational he could not assist in his own defense. The point cites no authority and is at best obscure. We interpret this point as a contention that the lower court should have ordered a competency hearing sua sponte. The point is easily resolved. The report from Fulton indicated that defendant had no mental disease or defect and had the capacity to understand the proceedings against him and to assist in his own defense. The report was not contested by defendant at trial, and a competency hearing was not specifically requested. A reading of the record indicates he understood the questions asked him by the trial court and responded to those questions. He understood his right to have witnesses subpoenaed and his right to take the witness stand. This record does not contain any circumstances sufficient to cast doubt on the conclusions of the report from Fulton and contains nothing sufficient to raise a bona fide doubt in the mind of the trial judge as to appel-

lant's mental competency to stand trial. The point is without merit. State v. Stein, 504 S.W.2d 1 (Mo.1974); Maggard v. State, 471 S.W.2d 161 (Mo.1971); McCormick v. State, 463 S.W.2d 789 (Mo. 1971).

No error appearing, the judgment is affirmed.

All concur.