STATE of Missouri, Respondent,

v.

James Wilson CHAMBERS, Appellant.

No. KCD 28083.

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

Motion for Rehearing and/or Transfer
Denied May 2, 1977.

Application to Transfer Denied
June 14, 1977.

Melvin G. Franke, Public Defender, Union, for appellant; Prudence L. Fink, Union, of counsel.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

SOMERVILLE, Judge.

Defendant was charged under the Second Offender Act with assault with intent to kill with malice aforethought (§ 559.180, RSMo 1969). He was found guilty by a jury as charged and the court, after making the requisite findings relative to the Second Offender Act, fixed his punishment at fifteen years confinement in the Department of Corrections.

Defendant duly appealed and in pressing this court for relief charges three instances of alleged error. First, due to an allegedly improper arraignment, the trial court lacked jurisdiction to try the case. Second, the trial court erred in admitting State's Exhibit 2 (three spent cartridges) and State's Exhibit 3 (a "nickel plated" .32 caliber revolver) because they "were not connected up with the crime or the defendant". Third, the trial court erred in permitting a state's witness to testify as to a statement made to him by defendant after the assault as the prosecuting attorney allegedly failed to disclose the same to defense counsel when discovery was requested.

Defendant has not challenged the sufficiency of the evidence to support the guilty verdict and a fairly terse recital of the evidence demonstrates why he has not done so. About half past midnight on January 1, 1974, a melee occurred in front of the V.F.W. Hall located approximately one-half mile north of Antonio, Missouri, while a public dance was in progress. Roger Griffin, the victim, who was attending the dance, left the hall and went outside to see what was going on. As he approached the melee he suggested that, "everybody go inside and listen to the band". Whereupon, the defendant grabbed him around the neck, placed a revolver in his stomach, and shot him twice. As the victim staggered backwards, defendant shot him a third time in the stomach. The victim, obviously a person of hardy stock, survived.

Defendant's contention that the trial court lacked jurisdiction to try the case centers around his arraignment. The offense, which occurred in Jefferson County, was tried in Morgan County on change of venue. During the interim, a change of prosecuting attorneys occurred in Jefferson County. Defendant was never arraigned until after an amended information was filed in Morgan County by the succedent Prosecuting Attorney of Jefferson County. For some unexplained reason, upon arraignment in Morgan County, defendant was read the information filed by the former Prosecuting Attorney of Jefferson County. The amended information upon which de-

fendant was tried and convicted, and the preceding information which was read to him when he was arraigned, were *identical* save for their dates of verification and the names of the subscribing prosecuting attorneys. Defendant does not claim that the amended information was insufficient or wanting in any respect to properly charge him with the offense for which he was tried and convicted, or that he failed to receive a copy of it. His argument, highly convoluted in nature, takes the following tack: the information read to him on arraignment had been suspended by the filing of the amended information [Rule 24.14 and *State v. Berry,* 298 S.W.2d 429, 432 (Mo.1957)] and therefore no jurisdiction attached in the trial court to try him.

It is true that there can be no trial, conviction, or punishment absent a formal charge, i.e., an indictment or information. *State v. Harrison,* 276 S.W.2d 222, 223–24 (Mo.1955) *cert. denied* 349 U.S. 948, 75 S.Ct. 877, 99 L.Ed. 1273 (1955); and *State v. Granberry,* 530 S.W.2d 714, 719 (Mo.App.1975). The complete absence of a formal charge is jurisdictional and cannot be waived. *State v. McQueen,* 282 S.W.2d 539, 540 (Mo.1955). An information on file charging a defendant with an offense to which he pleads is a jurisdictional prerequisite. *State v. Gladies,* 456 S.W.2d 23, 24 (Mo.1970). These principles, however, in the context of defendant's first point, must be juxtaposed with the purpose and manner of conducting arraignments. The purpose of an arraignment is explicated in *State v. Borchert,* 312 Mo. 447, 279 S.W. 72, 75 (1925): "The evident purpose of an arraignment . . . is to ascertain whether defendant is *personally* before the court, in order that he may know what is being done in his case, and to give him an opportunity to plead guilty, if he elects to do so, or to enter a plea of not guilty." The manner of conducting an arraignment is prescribed by Rule 25.04 which provides, in part, that "[a]rraignment shall be conducted in open court and shall consist of reading the indictment or information to the defendant *or*

*stating to him the substance of the charge* and calling on him to plead thereto. . . ." (Emphasis added.) When the above principles are superimposed on the record in this case, the inherent fallibility of defendant's first point is readily apparent. The language describing the offense in the information read to defendant on arraignment was repeated verbatim in the amended information, which was on file. Thus in every sense, the amended information, which was on file and upon which defendant proceeded to trial and was found guilty, charged defendant with the precise offense to which he pled not guilty. Every "evident purpose" was served by defendant's arraignment and the manner in which it was conducted complied with Rule 25.04, supra, as the obviously inadvertent reading of the earlier information, to say the least, stated the "substance of the charge" pending against him. Defendant's first point, ingenious though it may be, is totally lacking in substance, as the amended information on file charged him with the precise offense to which he pled not guilty and for which he was tried and found guilty.

Defendant, by way of his second point, charges the trial court with error in admitting into evidence State's Exhibit 2 (three spent cartridges) and State's Exhibit 3 (a "nickel plated" .32 caliber revolver). The gravamen of this point, according to defendant's brief, is that said exhibits "were not connected up with the crime or the defendant". Regarding State's Exhibit 3, the .32 caliber revolver, the state's evidence disclosed the following. A witness for the state testified that he was checking persons as they entered the dance hall to see if they were carrying a weapon; on checking defendant he saw and observed a "gun" which defendant was carrying; and he identified State's Exhibit 3 as the "gun" which defendant was carrying when he checked him as he entered the dance hall. The victim testified that when he was shot by the defendant, he saw a "shiny gun"; State's Exhibit 3 was displayed to him and upon being asked if it "appeared" to be "the same kind of a weapon", he replied, "Yes,

sir". Another witness for the state testified that he observed defendant shoot the victim and as the latter staggered backwards and was shot the third time he saw a "chrome plated .32 revolver" in defendant's hand; State's Exhibit 3 was displayed to him and upon being asked "if it was similar to the weapon you saw there that night", he replied, "Yes, sir"; and he further testified that he had previously seen State's Exhibit 3 before "when he [defendant] was shooting him [the victim]". Another witness, who was inside the dance hall when the shooting occurred, testified that after he heard shots he went outside the dance hall and saw defendant "crouched" behind a "van or car" in the parking area adjacent to the front entrance of the dance hall. He then went down to where defendant was, at which time defendant had a "nickel plated .32 revolver" in his hand; State's Exhibit 3 was displayed to him and upon being asked if it "appeared" to be "the same weapon" he observed in defendant's possession, he replied, "Yes, sir". Although State's Exhibit 3 was not seized or removed from defendant, it came into the possession of the investigating officers as the result of a tip that a weapon of the same description as that which defendant used to shoot the victim could be found in a home in Lemay, Missouri. Regarding State's Exhibit 2, the spent cartridges, the last mentioned witness also testified that he went back to the scene the following morning in the company of several deputy sheriffs and was present when the three spent cartridges which were marked and admitted as State's Exhibit 2 were found in the same location where he previously observed defendant "crouching" behind a "car or van". Regarding both the spent cartridges (State's Exhibit 2) and the .32 caliber revolver (State's Exhibit 3), a ballistic expert called by the state testified that the spent cartridges had been fired from the .32 caliber revolver.

■ In view of the above evidence, defendant's contention that the complained of exhibits "were not connected up with the crime or the defendant" is rejected. State's

Exhibits 2 and 3, if identified as the articles they were purported to be, and if shown to be connected with the crime and the defendant, were admissible. *State v. Richetti,* 342 Mo. 1015, 119 S.W.2d 330, 337–39 (1938). See also *State v. Martin,* 491 S.W.2d 299, 300 (Mo.1973). The evidence introduced by the state overwhelmingly substantiated the criteria for admissibility just mentioned. The .32 caliber revolver (State's Exhibit 3) was sufficiently identified as the weapon which defendant had in his possession shortly before the offense was committed, as the weapon used by defendant for assaulting the victim, and as the weapon observed in defendant's possession shortly after the assault was committed. The spent cartridges (State's Exhibit 2) were found at a location to which defendant had retreated after the assault and, according to the ballistician called by the state, had been fired from the .32 caliber revolver identified as State's Exhibit 3. The fact that the identification of said exhibits by certain witnesses may be said to have been somewhat qualified did not preclude their admission, as their identification did not have to be wholly unqualified in order to make them admissible. *State v. Kern,* 447 S.W.2d 571, 575 (Mo. 1969); *State v. Johnson,* 286 S.W.2d 787, 791 (Mo.1956); and *State v. Hollins,* 512 S.W.2d 835, 839 (Mo.App.1974). Any qualification as to their identification went only to the weight to be given them by the jury, not to their admissibility. *State v. Stancliff,* 467 S.W.2d 26, 30 (Mo.1971); *State v. Johnson,* supra, at 791; and *State v. Hollins,* supra, at 839. As the complained of exhibits were sufficiently identified as the articles they were purported to be and were repeatedly connected with the assault and the defendant, the trial court did not err in admitting them into evidence.

■ Defendant's third and final point rests upon the following testimonial incident. The state's witness, who approached defendant after the assault, was permitted to testify, over objection, that defendant stated to him, "If you want to know what kind of a gun I got, come down and find

out". Defendant's objection thereto was premised solely on the ground that the statement was not disclosed to defense counsel upon an oral request for discovery. Rule 25.32, so far as here pertinent, provides: "[T]he state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request: (1) The names and last known addresses of persons whom the state intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda reporting or summarizing part or all of their oral statements; (2) Any written or recorded statements and the substance of any oral statements made by the defendant . . .." The record presented to this court is virtually devoid of illuminating facts with which to resolve defendant's third and final point. The only appurtenant facts disclosed by the record are found in a colloquy between the prosecuting attorney and defense counsel which occurred when the objection was lodged. Considering what was involved, and particularly so as defense counsel orally requested disclosure, the most charitable description of the colloquy is that it struck a three-way balance between brevity, abstractness and vagueness. On the basis of the barren record presented, this court refuses to indulge in gross speculation and unbridled conjecture, as it would have to do, in order to find that defense counsel's oral request for discovery sought disclosure of the substance of the oral statement made by defendant to the witness and that the prosecuting attorney had "possession and control", i.e., knowledge, thereof. The paucity of the record apposite defendant's third and final point falls woefully short of presenting a basis for branding the trial court's admission of the complained of evidence as error. As a caveat, it vividly points up the inherent danger in the casual approach taken by defense counsel regarding discovery by orally requesting disclosure as opposed to making a written request for disclosure of particular discoverable items in accordance with Rule 25.32. Absent a proper record, the defendant had no standing to seek invocation of any of the sanctions prescribed in Rule 25.45. Parenthetically, the complained of statement, when viewed in conjunction with all the evidence, can hardly be said to have been prejudicial regardless of defendant's claim that it should have been excluded.

Judgment affirmed.

All concur.