STATE of Missouri, Respondent,

v.

Gene Elmer BLANKENSHIP, Appellant.

No. 9898.

Missouri Court of Appeals,
Springfield District.

July 14, 1975.

Frederick E. Steck, Sikeston, for appellant.

BILLINGS, Chief Judge.

Defendant Gene Elmer Blankenship was convicted of stealing "Baby", a 500 pound Duroc sow, and her three gilts from their Ripley County pen, and the jury fixed his punishment at two years in the penitentiary. He contends error was committed in denying him a continuance of his trial and asserts his inculpatory statements to officers should have been excluded from evidence because they were involuntary. We affirm.

"Baby" and her offspring, each of the latter weighing 350 pounds, were purloined from their owner's pasture on August 14, 1973. Defendant was taken into custody under a warrant on August 23, 1973, in Wayne County and was conveyed to the Ripley County Jail that night by Sheriff Dawes and Deputy Patrick. Miranda warnings were given the defendant at the time of his arrest and again after he had been lodged in jail. Three days later he admitted to the officers that he and another individual had stolen the hogs.

The state's information was filed September 11, 1973, and one week later the circuit court found defendant to be an indigent and appointed a Doniphan attorney to represent him. On December 4, 1973, the original trial date, the defendant disqualified the regular judge, and a special judge was designated to try the case. On April 12, 1974, defendant's trial was set by agreement for August 23, 1974.

On the morning of the scheduled trial defendant's attorney advised the judge that defendant had prepared and desired to submit a motion of his own. Entitled "Motion to Postpone Trial", the unverified document is as follows:

"(1) Hired Lawyer not present. Which was Hired about 6 months or more ago, hired same date as he was for Wayne Co. charge.

John C. Danforth, Atty. Gen., Mark D. Mittleman, Asst. Atty. Gen., Jefferson City, for respondent.

"(2) Wasn't notified 5 calender [sic] Days before trial date, was notified August 20th at 11:45 A.M. By telephone By [Doniphan] appointed Lawyer.

"(3) Wasn't notified early enough to supenia [sic] witnesses."

Defendant's attorney told the court that his client had advised him that he had hired a Sikeston attorney to represent him in a case pending in Wayne County and in the case before the court. The attorney stated he had not heard from the Sikeston attorney and understood that he was in Europe. The attorney also said that defendant felt he should have two individuals present as witnesses in his behalf, and that although he, the attorney, was late in notifying defendant the case was going to trial on August 23, 1974, he had in fact told him the case was set for trial. Defendant's pro se motion was denied, and trial and conviction followed.

In this appeal the defendant is represented by his employed attorney. Point One of defendant's brief states: "The court erred in not granting a continuance where ineffective assistance of counsel resulted in a denial to the defendant of his United States constitutional rights under the sixth and fourteenth amendments and requires a new trial in all criminal cases."

The remaining point in the brief is: "A conviction based on a coerced or involuntary confession is a denial of the fourteenth and fifth amendments of the United States Constitution and requires a new trial in all criminal cases." As subpoints to Point Two the brief continues:

"1. All the circumstances taken together or individually make the confession by the defendant involuntary and inadmissable [sic].

"2. The defendant was illegally detained in violation of rule 21.11 of the Rules of Criminal Procedure during which time and without the assistance of counsel a confession was elicited as the result of promises and threats by the sheriff.

"3. The subsequent confession to the prosecuting attorney was the result of the same influences and inducements and therefore inadmissable [sic]."

Initially, we observe that under the Supreme Court Rules we would be justified in summarily dismissing this appeal for non-compliance with those rules. No jurisdictional statement as required by Rule 81.-08(b), V.A.M.R. has been filed in this case even though this deficiency was called to the attention of defendant's counsel the same date the notice of appeal was received. Defendant's brief does not contain the jurisdictional statement required by Rule 84.04(b). Defendant's statement of facts falls short of being a "fair and concise statement . . . without argument." Rule 84.04(c). Defendant's points relied on do violence to Rule 84.04(d) inasmuch as they fail to advise us "wherein" and "why" the trial court erred in its rulings. Abstract statements of law, without any showing how they are related to actions or rulings of the trial court, are denounced by the rule and deemed inadequate. The argument portion of the brief does not contain a single page reference to the transcript as required by Rule 84.04(h).

We again call attention to the ever-increasing number of cases, civil and criminal, being appealed to the Court of Appeals of this state and the necessity for adherence to the rules governing appeals. The rules are for the benefit of all—litigants, attorneys and the appellate courts. The expansion of the jurisdiction of the Court of Appeals by constitutional mandate and interpretations thereof by our Supreme Court has resulted in an overflow of appeals that may ultimately submerge the appellate process in this state.[1] Compliance with the appellate rules of procedure can help dam against the rising crest of appeals awaiting appellate review.

---

1. Our records reflect a three-fold increase in the number of appeals and petitions for original writs since our 1970–1971 judicial activities report.

Since this is a criminal case and we are not unaware of the propensity of the federal judiciary in habeas corpus proceedings to ignore the rules and statutes governing procedure and practice of preserving error and obtaining judicial review in this state, as well as to override decisions of our Supreme Court, we have concluded, albeit reluctantly, to wade through the trial transcript and argument portions of defendant's brief in an effort to rule the defendant's complaints on the merits.

*Point One* : The thrust of this point is that the defendant's pro se motion for a postponement of the trial should have been granted because his appointed attorney failed to investigate to determine if there were any witnesses for the defense, failed to earlier notify the defendant of the trial date, and failed to familiarize himself with the principles of law applicable to the case.

■ The only issue for our review is whether the trial court was guilty of an abuse of discretion in denying the defendant's last minute motion on the morning of the trial. We are cited to a multitude of cases bearing on the question of ineffective assistance of counsel, but the issue of the trial court's discretion and alleged abuse thereof is not touched upon. If the defendant is attempting to charge his trial attorney with ineffective assistance of counsel "[W]e decline to review this contention on direct appeal because the record does not sufficiently develop facts essential to a meaningful review." *State v. Cluck*, 451 S.W.2d 103, 107 (Mo.1970).

Turning to the question whether the denial of defendant's motion constituted an abuse of discretion, we first recognize the rule that we should not lightly disturb the action of a trial court in this area and should interfere only where a clear abuse of discretion has been demonstrated. *State v. Reece*, 505 S.W.2d 50 (Mo.1974).

■ In granting or denying a continuance in a criminal case the trial courts, of necessity for the proper and orderly process of the administration of justice, are vested with broad discretion. *State v. Crider*, 451 S.W.2d 825 (Mo.1970). See also *State v. Jefferies*, 504 S.W.2d 6 (Mo.1974).

Here, the defendant was appointed counsel more than eleven months before the trial. Taking the defendant's unverified motion at face value, he had employed another attorney six months or more before the trial date. No entry of appearance by such an attorney appears in the record, and according to defendant's trial attorney he had not heard from the other attorney about the case.

■ The original trial date, December 4, 1973, was circumvented by the defendant's disqualification of the regular judge. Thereafter in April, and by agreement, the trial was set for the August date. The defendant had ample time to consult with his appointed lawyer to assist in the preparation of his defense, including advising his attorney of any witnesses he desired subpoenaed in his behalf. There is no record showing that he made any attempt to notify his attorney of any witnesses or, for that matter, of the employment of another attorney to take over his case.

Treating the defendant's motion as one for a continuance, it is fatally deficient. It in no respects complies with the requirements of the statute [§ 545.720, RSMo 1969, V.A.M.S.] or the rule [25.08 V.A.M.R.] governing an application for a continuance.

We find no abuse of discretion by the trial court, and the point is denied.

■ *Point Two* : Before the state offered evidence of defendant's confession the trial judge, out of the hearing and presence of the jury, conducted a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing on the voluntary nature of the confession. The state, having the burden of proof of voluntariness since the confession was obtained while the defendant was in custody [*State v. Williams*, 369 S.W.2d 408 (Mo. banc 1963)], offered the testimony of Sheriff Dawes that the de-

fendant had been given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); that the defendant indicated he understood his "rights"; and that no promises, threats, or mistreatment was involved in the defendant admitting his guilt. Thus, the state met its burden by presenting a *prima facie* showing of voluntariness. *State v. Nolan*, 423 S.W.2d 815 (Mo.1968).

The defendant called Deputy Patrick as a witness in support of his contention the confession was involuntary. The deputy's testimony as to a conversation between the sheriff and the defendant prior to the latter's admissions can best be summarized by the last question asked the witness by defendant's counsel and the deputy's answer:

"Q: The purport was he was trying to help him on some other cases that were against him?

A: No, not to that extent. He [sheriff] said he wanted to talk to him about it and he would do what he could for him, but he could promise him nothing. That is what the sheriff said, as close as I can remember."

The defendant admitted that the sheriff had read him the Miranda warnings several times. He said the sheriff told him that if he did not cooperate the sheriff was going to bring more charges against him. As a result of the sheriff's statement the defendant said he then admitted his involvement in stealing the hogs. On cross-examination the defendant admitted that prior to giving the prosecutor a written incriminatory statement he had been asked by that official if he had any complaints about the way he was being treated and his only complaint was that he did not like the jail food very well. The prosecutor also asked the defendant if he, the prosecutor, had not made inquiry of him of any promises or threats

by the sheriff. The defendant replied: "I don't remember for sure about that."

Also produced by the defendant as witnesses on the confession issue were his father and mother. The mother testified the sheriff told her that if she knew anything that her son had done to tell him and it would make it lighter on her son. Defendant's father said he was present when the sheriff was talking to Mrs. Blankenship and the sheriff told them that if they knew anything or could get the defendant to say anything "[T]hey would go easy on him in this county and they would try to see that charges were dropped on him in Wayne County." In rebuttal, the sheriff testified he did not make the statements attributed to him by Mr. and Mrs. Blankenship.

The trial judge concluded the defendant's confession was voluntarily made, and the sheriff testified as to the defendant's admissions as part of the state's case.

■ "Where, as here, the testimony conflicts as to whether the confession was voluntary, admission of the confession into evidence by the trial court is a matter of discretion. *State v. Pierce*, 236 S.W.2d 314 (Mo.1951)." *State v. Garrett*, 510 S.W.2d 853, 855 (Mo.App.1974). We give due deference to the opportunity of the trial court to judge the credibility of witnesses [Rule 73.-01(3)(b)], and the evidence adduced at the hearing supports the conclusion that the confession of guilt by the defendant was voluntary.

■ The defendant further attacks the use of his confession because officers failed to take him before the Magistrate Judge of Ripley County on Friday or Saturday following his Thursday night arrest. Defendant says that this failure violated Rule 21.11[2] and rendered his detention in jail

---

2. Rule 21.11 reads as follows:

"Warrant—Arrested Person Brought Before Judge or Magistrate

Persons arrested under a warrant for any offense shall, as soon as practicable, be

brought before the judge or magistrate out of whose court the warrant issued, or if he is absent or his office be vacant, then before the nearest judge or magistrate of a court in such county having original jurisdiction to try criminal offenses. The warrant upon

illegal, and, consequently, his Monday confession was rendered constitutionally infirm. We are cited to no authority which holds that noncompliance with Rule 21.11 converts a lawful incarceration into an unlawful one. In addition, the testimony of Sheriff Dawes was undisputed that when he inquired of the magistrate judge Friday when he could bring the defendant before the judge, the magistrate told the sheriff he would see the defendant Monday. We find no merit in this prong of defendant's contention.

The judgment is affirmed.

All concur.

which the arrest was made, with a proper return endorsed thereon and signed by the officer making the arrest, shall be delivered to such magistrate or judge."