**STATE of Missouri, Respondent,**

v.

**Herman D. FULSOM, Appellant.**

**No. KCD 28718.**

Missouri Court of Appeals, Kansas City District.

Oct. 11, 1977.

Clifford A. Cohen, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, C. J., PRITCHARD, P. J., and DIXON, J.

PRITCHARD, Presiding Judge.

Appellant, found to be a second offender, was sentenced by the court to 10 years imprisonment in the Department of Corrections, upon his finding of guilt by a jury of burglarizing Peterson Prescription Center, 4900 Swope Parkway, Kansas City, Missouri.

Three points, not raised in the motion for new trial, involving federally protected, constitutional rights, will nonetheless be considered.

The first point is that the trial court erred in overruling appellant's motion to suspend the [trial] proceedings so that he could be examined mentally under § 552.-020, RSMo 1969, "insofar as such failure denied appellant a determination of his competency to proceed and violated his due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution." The matter came up in this way: The trial began February 4, 1976, with appellant and his counsel present with a jury. Preliminary instructions were given and one witness gave testimony prior to the noon recess, at which time counsel told appellant he would see him at 1:30 p. m. Appellant had been late that morning and the court had admonished him not to be late again. Appellant did not appear at 1:30 p. m. A recess was taken after which appellant had not appeared, and court was adjourned until 9:30 a. m. the following morning, at which time appellant again failed to appear. After the previous noon recess appellant's counsel told the court, "Well, the only reason that I can think of that he's not here is because he felt that he was going to be convicted and wanted to avoid prosecu-

tion." The next morning, in appellant's absence, counsel stated that there had been no waiver of appellant's right to confrontation; there had been no disruptive behavior on his behalf; and that there was no concession that his absence was due to inattention, or was either voluntarily or intentionally done. Counsel then moved the court to suspend the proceedings, "so that the defendant may be mentally examined by competent physicians, because during the course of these proceedings the defendant has acted irrationally, and has, in effect, appeared incompetent to reason in connection with these proceedings. To illustrate this, the defendant was unable to come to any decision as to whether or not it was in his better interest to plead on the charge, or to go to trial. He could not adequately or effectively assist his counsel in any manner." [Paradoxically, counsel stated also: "Further, the defendant was in the process of giving defense counsel valuable information, regarding the circumstances surrounding his arrest and apprehension inside of the Peterson's Prescription Center, at 4900 Swope Parkway, immediately preceding trial. It was anticipated by defense counsel that he would also be available to give further assistance to counsel, during the course of the trial."] A written motion for mental examination was subsequently filed, and was overruled.

■ The conclusory statements of appellant's counsel, not only being contradictory as above noted, do not prove themselves. What is determinative of the issue of appellant's competency to proceed with trial is the trial court's observation of him and its appraisal of his mental state. In this connection, the court stated, "Now, in this matter there was an aborted guilty plea, at which time it was obvious to all concerned that the defendant had no mental problems. There was no request by counsel for defendant, after representing this defendant for a long period of time, and after having represented him at an aborted guilty plea, and after representing him during voir dire, at which time the Court observed the defendant apparently intelligently cooperating with his counsel, and the Court is not

aware of any development regarding the defendant since that time, and can only conclude that the motion for mental examination is a matter of strategy, rather than an actual desire to have the mental examination, because there have been no developments that could have occurred in the interim."

Other than counsel's statements, conclusions and the written motion for mental examination, none of which, as noted, prove themselves, nothing was presented to the trial court by way of facts which would tend to establish a reasonable cause to believe that appellant had a mental disease or defect excluding fitness to proceed under § 552.020, at the time the motions were presented, February 4, 1976. Indeed, the court's observations, supra, indicate that appellant had no disease or defect affecting his ability to cooperate with counsel in proceeding with trial. For a statement as to the deference to be accorded the trial court in its observations of a person's mental capacity to proceed, see *State v. Rand,* 496 S.W.2d 30, 38 (Mo.App.1973), a case where, as here, the defendant sought to present the issue of mental unfitness to proceed to trial after it had started.

■ Further revealing on the issue is appellant's trial counsel's testimony on the hearing upon the motion for new trial: During his representation of appellant, he had no occasion to discuss with him his defenses under Chapter 552. Although he knew appellant was receiving methadone as a substitute for heroin, counsel formed no opinion that because of his drug habits he did not understand his rights. On the day prior to trial when counsel tried to plead appellant guilty, he believed that he knew what was taking place. On the day of trial, there were indications that appellant, as a result of previous plea negotiations, "didn't know a good deal when he saw one" but that did not cause counsel to presume that made him incompetent. He could not tell by his demeanor that appellant was then under the influence of drugs—he did not appear to be. Appellant seemed to counsel

that he understood what was going on. The motion for mental examination filed by counsel was on the basis that appellant did not appear after the noon recess, and on February 5, 1976, that he did not appear to appreciate the plea offers made, on the basis that he had a drug habit, and the fact that there may have been a possibility that a mental problem existed. There was nothing presented to the trial court to cause it to believe that good cause existed to permit the defense to be raised at the beginning of trial, thus in effect waiving the 10-day notice of the defense required by § 552.030(2). *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), relied upon by appellant, is distinguishable by the existence therein of facts creating a reasonable doubt as to defendant's competency to stand trial. The trial court did not err in overruling the motion for mental examination.

■ By Point II, appellant contends that the trial court committed reversible error in proceeding to trial in appellant's absence, in violation of his Sixth Amendment rights to confront witnesses against him, and to have effective assistance of counsel. Where a criminal defendant voluntarily absents himself during the course of the proceedings, he is held to have waived his constitutional and statutory right to be present. *State v. McCrary,* 287 S.W.2d 785, 787 (Mo.1956). In *State v. Whites,* 538 S.W.2d 70, 73 (Mo.App.1976), it was said that when a defendant is free on bond (as here) and does not appear at the time specified, it is presumed, until established otherwise, that his absence is voluntary for the purpose of deciding whether he has waived his right to be present at trial. The only explanation came from appellant in testifying during the hearing on the motion for new trial. Appellant claimed that his failure to return to trial resulted from an overdose of methadone which he had taken the previous night; that he regained consciousness on the evening of February 5, 1976, and was then informed by his mother that the trial had already ended, and he was unable then to reach his attorney; he admitted expressly denying to the court on

appearing for trial or a plea February 4, 1976, that he was under the influence of drugs. He did not ever contact his attorney after February 5th. [His attorney saw him only after his arrest about a month later when he was in jail and when counsel was there to see another client.] The trial court was not bound to accept appellant's version as to the reason for his absence, especially in view of his conflicting testimony. The trial court, under this record, did not err in proceeding to trial in appellant's absence.

■ By his last point, appellant contends that it was error to allow a police officer to identify a photographic "mug shot" because it suggested that he had a prior criminal record. The officer testified that the photograph was taken on the same day appellant was arrested, so by no implication could it suggest a prior criminal record. See *State v. Poor,* 533 S.W.2d 245, 250–251 (Mo.App.1976), which controls the point. The other portion of the last point is that appellant was denied confrontation of the witness, but that contention is ruled by his waiver of the same by his voluntary absence from trial.

The judgment is affirmed.

All concur.