**STATE of Missouri, Respondent,**

v.

**Cliff CROWLEY, Appellant.**

**No. 38617.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Aug. 8, 1978.

Motion for Rehearing and/or Transfer
Denied Sept. 15, 1978.

Kenneth R. Singer, Howard, Singer & Meehan, St. Louis, for appellant.

## 462

John D. Ashcroft, Atty. Gen., Preston Dean, Paul Robert Otto, Jefferson City, Carson W. Elliff, Asst. Attys. Gen., George A. Peach, Circuit Atty., St. Louis, for respondent.

DOWD, Presiding Judge.

Defendant Cliff Crowley was convicted by a jury of four counts of robbery in the first degree by means of a dangerous and deadly weapon § 560.135 RSMo 1969. He was sentenced to fifteen years imprisonment for each count, to run concurrently. Defendant appeals, and contends that the trial court erred in (1) not allowing defendant to raise the affirmative defense of mental disease or defect at the time of the alleged offense (2) allowing the introduction of a weapon into evidence where the State did not lay a proper foundation for its admission; and (3) overruling defendant's motion for suppression of a confession which was not voluntarily and knowingly made. We affirm.

The first contention is that the trial court should have allowed defendant to raise the defense of mental disease or defect at the time of the alleged offense. Defendant was arraigned and pleaded not guilty on September 25, 1975. On October 6 defendant, then represented by a public defender, filed a motion for psychiatric examination. The motion was withdrawn on October 22. Defendant's present counsel then entered his appearance on November 17 and subsequently, on April 27, 1976 the motion for psychiatric examination was reinstated. The motion was sustained, and defendant was examined by a state psychiatrist who reported to the court on July 29 that defendant was competent to proceed with trial.

Section 552.020(3) RSMo (1969) details the contents of a psychiatric examination report. Among other things, the report is to include an opinion as to whether at the time of the alleged criminal conduct the accused as a result of mental disease or defect did not know or appreciate the nature, quality, or wrongfulness of his conduct or as a result of mental disease or defect was incapable of conforming his conduct to the requirements of law. § 552.-020(3), (4) *supra.* If the accused disputes the finding of the psychiatrist within five days after the filing of the report, he is entitled to be examined by a private physician of his own choosing. § 552.020(4) As neither the accused nor his counsel contested the psychiatrist's findings, the case was removed from the Mental Docket and set for trial. On September 22, 1976, six days before trial, defendant filed notice that he intended to raise at trial the defense of mental disease or defect at the time of the alleged crime.

Section 552.030(2) RSMo 1969 provides that the defense of mental disease or defect at the time of the crime should be raised at the time of defendant's plea of not guilty, or by written notice ten days thereafter, or at such time as the court may for good cause permit. To establish good cause where the motion does not support itself, the accused should offer evidence either supporting the merits of the motion or establishing good cause for the late filing of the motion. *State v. McIntosh,* 492 S.W.2d 843, 844[1] (Mo.1973); *State v. Lowe,* 442 S.W.2d 525, 528[2] (Mo.1969). If the defense is not raised in accordance with the statutory requirements, the trial court has considerable discretion in determining whether the defendant has shown good cause for the late request. *State v. Holmes,* 439 S.W.2d 518, 520[3] (Mo.1969).

We do not believe the record indicates the trial judge abused his discretion. At the pretrial hearing on the motion appellant advanced four reasons why the motion to use the defense should be sustained. The first was that until the time written notice was given, appellant could not afford a private psychiatrist. However, no evidence was presented to show that appellant was unable to obtain the necessary funds for the psychiatrist before trial. The second reason was that counsel did not learn until September 24, 1976 when appellant's own psychiatrist conducted an examination that defendant could have a defense on the ground of mental defect. However, appellant's as-

sertions that he had given the State ample notice of his reliance on the defense indicates that appellant knew or should have known of the possibility of this defense. The third reason was that present counsel was not retained until almost two months after arraignment and thus was unable to comply with the statute. However, we note that present counsel had been counsel of record for over ten months before trial and had sufficient opportunity to file notice. *State v. Vansandts*, 540 S.W.2d 192, 205 (Mo.App.1976).

■ Defendant also asserts that putting the state "on notice" that his denial of guilt is based on mental disease or defect is sufficient to comply with the terms of the statute. The purpose of § 552.030(2) is "to prevent the surprise use of such defense precluding adequate rebuttal by the prosecution." *State v. Holmes*, supra, at 520[3]. In furtherance of this purpose, the statute sets forth specific requirements for raising the defense of mental disease or defect. Merely putting the State "on notice" that denial of guilt is based on this defense does not comply with these requirements. The statute also grants the trial court discretion to permit use of the defense where good cause is shown. For the reasons discussed above, we do not believe the record indicates the trial court abused its discretion in denying defendant's motion to use the defense of mental disease or defect.

■ Defendant's next point is that the State did not establish the requisite legal connection between appellant and a shotgun allegedly used in the commission of the crime and hence the shotgun should not have been admitted into evidence for lack of proper foundation. The relevant facts indicate that on August 17, 1975 at approximately 1:00 a. m. defendant and a companion entered the Boulevard Lounge located on the 7100 block of Manchester Avenue in the City of St. Louis. Defendant was carrying a double-barreled sawed-off shotgun. One of the men announced "this is a holdup" and told everyone to get on the floor. The testimony of three customers in the tavern established the similarity be-

tween the holdup weapon and the gun presented as evidence at trial. Richard Brown, who was playing pool, testified at trial there there was an interval of 15–20 seconds from the time he looked up at defendant and the shotgun and then laid down on the floor. He testified that there was enough light so that he could recognize the weapon as a sawed-off double-barreled .12 gauge shotgun. He also testified that the shotgun exhibited at trial appeared to be the same type of weapon used in the robbery. Carrollynn Colbert was sitting at the piano bar when defendant entered the room. She also testified that before she was ordered to lie down on the floor she looked directly into the barrel of the gun. She described the weapon as a double-barreled shotgun and stated that the exhibit was very similar to the one used that night. Christopher Colbert testified that he viewed defendant for approximately 90 seconds before lying down on the floor. He identified the exhibit as "approximately like" the weapon used in the robbery. While these customers were on the floor defendant took their money and Carrollynn Colbert's handbag. Thereafter he and his companion fled through the front door.

Two St. Louis Metropolitan Police Officers were called to the scene by a silent burglar alarm. They stopped their cruiser near the corner of Blendon and Manchester, east of the lounge, just as the robbers were leaving the scene of the crime. When defendant saw the cruiser, he ran north across an adjacent parking lot to the rear of the lounge. Officer Deschler testified that he saw defendant carrying a paper bag, but neither officer saw defendant with a shotgun. Later that morning the shotgun allegedly used in the offense was found at the rear of the lounge with Carrollynn Colbert's handbag.

■ This evidence more than adequately substantiates the linkage between defendant and the shotgun necessary to sustain admissibility. It is firmly established that identification by witnesses of articles offered into evidence need not be wholly unqualified so as to make them ad-

missible. *State v. Kern,* 447 S.W.2d 571, 575 (Mo.1969); *State v. Johnson,* 286 S.W.2d 787, 791 (Mo.1956); *State v. Chambers,* 550 S.W.2d 846, 849 (Mo.App.1977); *State v. Hollins,* 512 S.W.2d 835, 839 (Mo.App.1974). If testimony concerning physical objects found near the scene of a crime which tend to show the way in which the crime is committed but not otherwise connected with the defendant is admissible, the physical objects themselves are also admissible. *State v. Henderson,* 510 S.W.2d 813, 820 (Mo.App.1974). The shotgun along with a victim's handbag was found in a place to which appellant retreated after being spotted by police. Because that fact corroborates the witnesses' testimony on an issue of the case and has probative value, it may be considered by the jury. *State v. Henderson,* supra, at 821[8].

The final point that defendant raises is that his confession should not have been admitted into evidence because the State did not prove that the confession was voluntarily and knowingly made. After the appellant was apprehended by the police, he was returned to the lounge for identification purposes. He was positively identified by an employee and patron of the lounge and, consequently, was placed under arrest. Officer James Smith testified that at that time he read defendant the Miranda warnings. A scuffle thereupon ensued between defendant and police in which, according to hospital records, defendant suffered facial contusions. Thereafter, defendant was taken to a city hospital for treatment and then to the police station. Again the Miranda warning was read to him by Officer Smith. Defendant then indicated in the presence of Officers Smith and Gelhard that he understood his rights and confessed to the robbery. Officer Smith testified that he did not believe defendant was drunk at the time of the confession and that he had not been subject to physical force while at the police office. Defendant testified that the day of the offense he had consumed large quantities of liquor and had been under the influence of drugs. He could only vaguely recall the scuffle with police and he did not recall making a confession.

**█** The State has the burden of showing that a confession has been voluntarily made by a subject in custody. *State v. Williams,* 369 S.W.2d 408, 418[4] (Mo. banc 1963). That burden is met when the State makes a prima facie showing of voluntariness. *State v. Hunter,* 456 S.W.2d 314, 316[5] (Mo.1970). The State need only show that at all stages of interrogation the defendant was informed of his constitutional rights, was capable of understanding these rights, and that no physical force, threats, promises or coercive tactics were used to obtain the confession. *State v. Hunter,* supra, at 316[7]. The State is not required however, to negative every possible circumstance which could raise a question as to whether the confession was voluntary. If defendant contends there were special circumstances that caused an involuntary confession, it is incumbent on him to present evidence supporting his contention. *State v. Nolan,* 423 S.W.2d 815, 818[8, 9] (Mo.1968). Failure to do so will result in the admission of the confession.

**█** The testimony of the police officers who took defendant's statement is sufficient to establish a prima facie case that the confession was voluntarily and knowingly made. *State v. McConnell,* 529 S.W.2d 185, 189[3] (Mo.App.1975); *State v. Blankenship,* 526 S.W.2d 78, 82[5] (Mo.App.1975). The fact the defendant may have been drinking heavily and under the influence of drugs the previous day does not automatically render the confession involuntary. *State v. Heather,* 498 S.W.2d 300, 305[5] (Mo.App. 1973); *State v. Thomas,* 522 S.W.2d 74, 76[3] (Mo.App.1975).

**█** The basic issue is whether the confession was the product of an intellect capable of understanding the consequences of his actions. *State v. Heather,* supra, at 304[6]. The testimony is conflicting regarding the voluntariness of the confession here, since the police officers testified that defendant did not appear intoxicated at the time of the confession, while defendant did not recall making the confession at all. In such a situation, admission of the confession

into evidence by the trial court is a matter of discretion, and we defer to the trial court's ruling on the credibility of witnesses unless manifest error has been committed. *State v. Blankenship*, supra, at 82, [6, 7]; *State v. Anderson*, 384 S.W.2d 591, 604[23] (Mo. banc 1964). We believe there was sufficient evidence for the trial court to conclude the confession was voluntarily made.

Judgment is affirmed.

SNYDER, J., and ALDEN A. STOCK-ARD, Special Judge, concur.