STATE of Missouri,
Plaintiff–Respondent,

v.

John COLLINS, Defendant–Appellant.

No. WD31044.

Missouri Court of Appeals,
Western District.

Sept. 2, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 1, 1980.

Application to Transfer Denied
Dec. 15, 1980.

Julian J. Ossman, Asst. Public Defender, Jefferson City, for defendant–appellant.

John Ashcroft, Atty. Gen., Mary C. P. Pincus, Asst. Atty. Gen., Jefferson City, for plaintiff–respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

DIXON, Judge.

Defendant appeals a conviction for assault with intent to kill and a court–imposed sentence under the Second Offender Act, § 556.280 RSMo 1969 (repealed effective January 1, 1979 by the Laws of 1977, Senate Bill # 60, § 1), of five years.

Defendant asserts error in refusing a mistrial because of a premature display of a "knifelike object," in the admission in evidence of a "knifelike object," and in the admission of defendant's written statement.

Defendant, a penitentiary inmate, was charged with stabbing a fellow inmate, Roland Black, with a knife in the Missouri State Penitentiary. At about 6:20 p. m. on September 9, 1978, three corrections offi-

cers were in the dining room eating breakfast. The corrections officers were Dale Gonzagowski, Lloyd Hogg, and Larry Miller. Officer Gonzagowski testified that at about 6:20 a. m. he and his fellow officers were approached by an inmate who told them that he had been stuck or stabbed. Officer Gonzagowski noticed that inmate Black had blood running down the front of his shirt and that as he talked blood spurted out. The inmate was escorted by the other officers sitting with Officer Gonzagowski to the emergency room. As they left the table with the inmate, Officer Gonzagowski spotted a weapon lying on the floor. He turned the weapon over to Mr. Armontrout, the associate warden of the prison. Officer Gonzagowski identified the weapon, a knife, as State's Exhibit No. 1.

When inmate Black arrived at the emergency room, he had no pulse and was not breathing. After his respirations and circulation had been restored, the victim's treating physician, Dr. Doerhoff, ascertained that the victim had suffered a stab wound of the chest which had punctured and collapsed his lung. The doctor inserted a chest tube at that time in order to re–expand the lung and remove the blood from the thoracic cavity. The stab wound was described as being at least an inch or more in width and an inch and a half to two inches in depth. Both Dr. Doerhoff and Dr. Key testified that State's Exhibit 1, the knife found near the victim at the time of the stabbing, could have caused Mr. Black's chest wound.

Immediately after inmate Black was taken from the cafeteria to the emergency room, Mr. Armontrout called one of the cooks to ask for his help in locating the defendant. The cook found defendant, escorted him to the kitchen office, and contacted Mr. Armontrout. Defendant was taken to the office of Captain Hachtel by Associate Warden Armontrout and Warden Wyrick. Once in the captain's office, defendant was advised of his right to remain silent and his right to have an attorney present during questioning. He was also advised that if he could not provide an attorney for himself one would be provided for him. Defendant stated that he wished

to talk with the associate warden, and he signed a paper entitled "statement of rights" which was read to him and which he himself read. Defendant was then questioned by Mr. Armontrout. In answer to Mr. Armontrout's question inquiring about who stabbed inmate Black, defendant stated that he was the one who stabbed him.

Later in the day, at approximately 2 p. m., Mr. Urban Lock, an investigator for the Missouri State Penitentiary, again questioned defendant. The questioning took place after Mr. Lock asked defendant whether he had been advised of his rights earlier that same day. Defendant indicated that he had been and that he had waived these rights and then gave Mr. Lock a written statement. The form defendant used for writing out his statement contained a printed paragraph which indicated that prior to voluntarily giving his statement, defendant was advised of his constitutional rights and signed a waiver of rights form; that he had read the statement and attests that it is true; and that the statement was freely given without fear, threat, or promise of reward. The signature of John Collins appeared below this paragraph as well as the signatures of Harold Ferrin and Urban Lock. In his written statement, defendant admitted that he struck inmate Black in the chest with a knife–like object.

A knife–like object was found on the floor in the main dining room by Officer Gonzagowski. It was covered with fresh blood. The blood on the knife was of the same type as that of inmate Black.

Defendant chose to testify in his own behalf and also presented the testimony of fellow inmates Kenneth Reed and George Robinson. Mr. Reed testified that he was acquainted with defendant and that he knew of inmate Black by reputation. He said that approximately a week before the stabbing incident he saw inmate Black approach defendant with something that appeared to be a knife. He then saw defendant run from inmate Black. He said that inmate Black had a reputation for being

dangerous. George Robinson corroborated inmate Reed's testimony about that incident and further testified that inmate Black had a reputation for being aggressive.

Defendant testified that he had been acquainted with inmate Black for about four or five years prior to this incident, that inmate Black had dated his sister, and that he and inmate Black had argued in the past concerning family matters. As a result of this quarrel, inmate Black shot defendant in the shoulder. He also testified that he was told by other inmates that inmate Black was threatening him and that a week before the stabbing Black had threatened him with a knife. He said that on the day of the incident he was approached by inmate Black in the dining room and he just froze. Inmate Black then made a motion which appeared to defendant as if he were reaching for a knife, and in reaction to that defendant struck him in the chest with a knife–like object. Defendant stated that State's Exhibit No. 1 resembled the knife–like object he used to stab inmate Black.

The defendant's claim with respect to the improper use of the knife before its admission in evidence rests on the following argument. Defendant says the knife–like object was displayed on the counsel table from the beginning, and this unduly implanted a belief in the jurors' minds that the object was the weapon involved which denied the defendant a fair trial. No citation of authority supports the argument, but it will be reviewed despite that deficiency.

██ The facts concerning the initial display of the knife are to some extent uncertain. The first witness was a guard who was part of the chain of custody of the knife. This witness apparently came into the courtroom and handed the knife to the prosecutor or laid it on the table. Defense counsel immediately objected, and the court directed its removal and admonished the prosecutor. Defense counsel moved for a mistrial, and the trial court deferred ruling upon the motion. The motion was finally ruled at the conclusion of the state's case when, after repeated efforts, the knife was finally admitted into evidence. The trial court was apparently concerned that a weapon had been displayed to the jury which might never be in evidence which would present a very different problem than what finally developed in the instant case. There was no brandishing of the weapon or other dramatic use of it by the prosecutor. The trial court stated that the display of the knife was "cured" by its admission in evidence when he finally ruled the motion. The trial court's reservation of his ruling was thus demonstrated to be upon the basis of the display to the jury of an unadmitted exhibit and not upon the *manner* of the display. The argument that the premature display somehow influenced the jury to believe that the exhibit was the weapon used has no force when the whole evidence is examined. The prosecution attempted on five separate occasions to introduce the knife and the objections of defense counsel and the statements and ruling of the trial court would have certainly dispelled any notion or inference by the jury that the exhibit was entitled to any credit as evidence before it was introduced. The discretionary ruling by the trial court on the motion for a mistrial was based upon his observation of the trial incidents and their effect on the jurors. Such a discretionary ruling, based as it must be on the observation and understanding of a trial judge, is entitled to deference on appellate review–a deference often expressed as a rubric that only when such discretion has been "abused" will such a ruling be reversed. The drastic remedy of a mistrial is only invoked properly when the prejudice is so great the continuance of the trial would by reason of the prejudice created deny defendant a fair trial. *State v. Gash*, 572 S.W.2d 240 (Mo.App.1978). Thus, in instances where an abuse of discretion is found, the appellate court is weighing the ultimate prejudicial effect of the incident and finding that in any circumstances the prejudice engendered outweighs the values inherent in continuation of a trial before the empaneled jury. As has been demonstrated, no such prejudice inheres in the present case; if anything, the ineptness of

the presentation of the knife in evidence mitigated its effect upon the jury as evidence of guilt.

The defendant attacks the admissibility of the knife on two separate grounds. The first of these grounds is a hazy compilation of objection based on *hearsay res gestae* and *corpus delicti*. The only ground stated in the very sparse motion for a new trial is that the knife was improperly admitted in evidence as a part of the *res gestae*. That ground as stated in the motion could probably not support the present contention. Without so deciding, the claim will be examined as it is presented. The defendant's entire claim on this ground is contained in the following sentence from his brief:

"The conviction of Appellant was the result of error being piled on error, i. e., two negatives make a positive. In essence the State's case was proven by a confession of the Appellant which would not have, alone, been enough to convict, but the confession was corroborated by circumstantial proof of the 'corpus delecti' which was proven by hearsay testimony which was erroneously admitted into evidence under the guise of the 'res gestae' exception to the hearsay rule."

There are two fundamental difficulties with this argument. First, it assumes contrary to the fact that the hearsay statement of the victim was necessary to prove the "corpus delicti." The facts recited above show that the evidence excluding the victim's statement was ample to show that a "crime" had been committed. No extended discussion of the principles of corpus delicti is necessary.

If it was necessary to establish the criminal agency aside from the physical evidence, the defendant's admissions would serve that purpose. *State v. Page*, 580 S.W.2d 315, 319 (Mo.App.1979). The physical appearance of the victim spurting blood, the bloody knife, and the medical evidence concerning the wound show that a stabbing had occurred.

■ Second, the assumption that the statement of the victim was inadmissible is erroneous. Tested by the classic guidelines for the admission of hearsay uttered under circumstances that its spontaneity renders it reliable and admissible, the victim's statement was properly admitted. The whole setting, the victim's presence in the dining hall, his wound, shock, and subsequent condition all indicate reliability sufficient to admit the utterance. *State v. Rogers*, 585 S.W.2d 498, 505 (Mo.App.1979).

■ Defendant also argued that the knife should not have been admitted because there is no evidence that the knife was the object which caused the wound on the victim's body. There is no necessity for proof that the knife be identified specifically as the weapon used. There is no requirement that the identity of a weapon be wholly unqualified to make a weapon admissible in evidence in a criminal case. The weight to be given to the identification is for the jury. *State v. Stancliff*, 467 S.W.2d 26, 30 (Mo.App.1971). Evidence that a weapon "looks like" or "could be" the weapon is sufficient. *State v. Crowley*, 571 S.W.2d 460, 463 (Mo.App.1978); *State v. McAllister*, 534 S.W.2d 611 (Mo.App.1976).

■ Defendant finally complains that his oral and written statements were improperly admitted because defendant was not re-warned prior to the second interview at which a written statement was taken. The state properly points out that voluntariness was waived by the defendant, and no objection was raised at trial or in the motion for a new trial concerning this issue. Factually, the written statement contained a formal restatement of the warnings, an assertion that they had been read and understood by the defendant. In *State v. McLallen*, 522 S.W.2d 1 (Mo.App.1975), it was held that the lapse of time after full and adequate explanation of *Miranda* warnings does not taint a subsequent statement unless there is some basis for a finding that defendant was unaware of his rights at the time the statement was made. Here the circumstances are such that the earlier warning plus the renewal of the warning by the written form preclude any finding that defendant was unaware of his rights with respect to incriminating statements. Cita-

tion by the defendant of *State v. Crowley, supra,* does not aid the defendant. Defendant was, in accord with *Crowley,* informed at all stages of interrogation of his constitutional rights. He was capable of understanding those rights, and no physical force or other coercive tactics were used to obtain the statements. He presented no evidence of special circumstances requiring additional warnings. *State v. Crowley, supra.*

Judgment affirmed.

All concur.