STATE of Missouri, Respondent,

v.

Lorn INGRAM, Appellant.

No. 61847.

Supreme Court of Missouri,
Division Two.

Nov. 12, 1980.

Harry Rupert Stafford, Jr., Hartville, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Commissioner.

Lorn Ingram was charged with and found guilty of capital murder, and was sentenced to life imprisonment without possibility of parole for fifty years. He has appealed from the ensuing judgment.

On January 5, 1979, appellant and his friend Tracy Freasier were visited at their home by Joe Walter Trent and Sherry Gi-marelli. The four drove to Gassville, Arkansas to pick up Freasier's pay check, and they then drove into Missouri where they made stops in several towns to run various errands, one of which was to obtain a 12 gauge shotgun "out of hock" which belonged to appellant. Considerable beer was purchased and consumed and at one place they ate pizza and played pool. They later drove to Trent's cabin, arriving there shortly after midnight. While there appellant became angry with Tracy for "butting into other people's business" and fired a shotgun near her feet. An argument also occurred between Joe Trent and Sherry Gimarelli, and as a result Sherry received a black eye, her hand was bruised, and she had a "knot on the back of her head." While en route to appellant's residence a verbal dispute between Trent and Sherry intensified and Trent turned the car around. When he did so appellant asked Trent to stop the car and let him and Tracy out, but Trent refused. According to Tracy, appellant then told Trent "to stop the car or he'd blow his brains out or kill him or something to that effect," and according to Sherry, appellant told Tracy "he'd better stop or he was going to use the gun on him." Trent replied, "Okay, you son of a bitch, if you think you can, go ahead" or "go ahead, if you've got the guts" (according to Tracy), or "go ahead, you S–O–B, if you think you can" (according to Sherry). Appellant then picked up a 16 gauge shotgun (not the 12 gauge gun that had been obtained earlier) from "between the seat * * * it was kind of on the floorboard," and shot Trent in the head.

By his first three points appellant asserts that the trial court erred (a) in overruling his motion for a mental examination pursuant to § 552.020 RSMo 1978; (b) "by failing to find reasonable cause to believe appellant had a mental disease or defect;" and (c) "in denying appellant his statutory and constitutional right of entering a plea of not guilty by reason of mental disease or defect."

Appellant was arraigned on February 7, 1979, and at that time he entered a plea of

not guilty. The case was set for trial on July 16, 1979. On July 12 appellant filed a "Motion for Mental Examination." A hearing was held on that motion. It was there developed that although appellant had never been in a mental institution, in 1972, seven years earlier, he had spent sixty days in a drug rehabilitation and alcohol center. Appellant testified that "everytime I seem to get in trouble I'm always drinking or on drugs." On cross–examination appellant demonstrated a clear understanding of the proceedings and the charges against him. The sheriff testified that appellant acted normally during the two months he had been confined in the county jail. At the conclusion of the hearing the court found: "there is no reasonable cause to believe that the defendant, Lorn Joe Ingram, has a mental disease or defect excluding fitness to proceed," and he does not lack capacity to understand the proceedings against him, and he can assist, in his own defense.

Section 552.020(2) RSMo 1978, provides in pertinent part as follows:

"Whenever any judge * * * has reasonable cause to believe that the accused has a mental disease or defect excluding fitness to proceed he shall, upon his own motion or upon motion filed by the state or by or on behalf of the accused, by order of record, appoint one or more private physicians to make a psychiatric examination of the accused or shall direct the superintendent of a facility of the department of mental health diseases to have the accused so examined by one or more physicians whom the superintendent shall designate."

Section 552.010 RSMo 1978, defines the term "mental disease or defect," and it is there stated: "The terms 'mental disease or defect' do not include alcoholism without psychosis or drug abuse without psychosis."

■ There was no evidence or indication that appellant was psychotic, and there was no showing that appellant was incompetent; on the contrary it affirmatively appears that he rationally consulted and advised with counsel, and that he was aware of and understood the proceedings against him.

Therefore the court did not err in overruling appellant's motion for a psychiatric evaluation pursuant to § 552.020 RSMo 1978. See *State v. Fulsom,* 557 S.W.2d 671 (Mo.App.1977); *State v. Sears,* 501 S.W.2d 491 (Mo.App.1973); and *State v. Harris,* 477 S.W.2d 42 (Mo.1972).

On the day the case was set for trial, July 16, 1979, appellant announced that he was "filing a response to request for disclosure" which had been served on his counsel on June 25, 1979. Appellant's counsel stated orally that in response to question number four, whether appellant intended to rely on the defense of mental disease or defect excluding responsibility, that he did intend to rely on that defense. After extended discussion and after appellant was afforded the opportunity to present evidence, the trial court refused appellant's request to rely on the defense of mental disease or defect excluding responsibility. Appellant now assigns this as error.

Section 552.030(1) RSMo 1978, provides that a person "is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law." But in paragraph (2) of that section it is further provided that "Evidence of mental disease or defect excluding responsibility shall not be admissible at trial * * * unless the defendant at the time of entering his plea to the charge pleads not guilty by reason of mental disease or defect excluding responsibility, or unless within ten days after a plea of not guilty or at such later date as the court may for good cause permit, he files a written notice of his purpose to rely on such defense."

■ The notice of intention to rely on the defense in this case was not in writing and the notice as given was five months after arraignment. The notice clearly was untimely. *State v. Sears,* supra. Therefore, the issue presented is whether the trial court abused its "considerable discretion," *State v. Holmes,* 439 S.W.2d 518, 520 (Mo.

App.1969), in holding that appellant failed to show "good cause" for accepting the untimely plea.

The court asked appellant's counsel if he desired to produce "additional testimony," other than that presented in support of the motion pursuant to § 552.020, and he replied, "Your Honor, I will stand on the testimony that I have submitted to the Court," and he later added that "the only new thing that has come to my attention is [appellant's] past history with drugs and drug–related problems."

■ As previously noted evidence of alcoholism or drug abuse, absent some additional evidence of psychosis, does not constitute mental disease or defect within the meaning of § 552.010 RSMo 1978. See *Boyer v. State*, 527 S.W.2d 432, 437 (Mo.App. 1975). As stated in *State v. Crowley*, 571 S.W.2d 460, 462 (Mo.App.1978), "to establish good cause [to permit an untimely notice of the defense of mental disease or defect excluding responsibility] where the motion does not support itself, the accused should offer evidence either supporting the merits of the motion or establishing good cause for the late filing of the motion." There was no evidence presented which indicates, or from which an inference could be drawn, that appellant was psychotic, or that he could have been suffering from a mental disease or defect excluding responsibility within the meaning of § 552.010. Therefore, the court properly denied the untimely attempt to interpose the defense. See *State v. Sears*, supra.

By his fourth point appellant asserts the court erred in admitting into evidence State's Exhibit No. 8, a 16 gauge shotgun "when the State failed to establish the identity of the shotgun or to establish a reliable chain of custody regarding said exhibit."

■ Appellant's contention is without merit for two reasons. First, a chain of custody was established. We need not detail the evidence. It is sufficient to state that the record shows the custody and control of Exhibit No. 8 from the time the sheriff of Baxter County, Arkansas, took possession of it two days after the homicide until it was identified in court as Exhibit No. 8. Second, chain of custody is an irrelevant issue where the exhibit is positively identified. *State v. Foster*, 600 S.W.2d 207, 209 (Mo.App.1980); *State v. Hanson*, 587 S.W.2d 895, 902 (Mo.App.1979); *State v. Holman*, 556 S.W.2d 499, 504 (Mo.App.1977). In *State v. Granberry*, 484 S.W.2d 295, 300–301 (Mo.banc 1972), it was stated that "Chain of control, as such, is only a relevant issue where the exhibit itself is not susceptible to positive identification in a singular sense," and in *State v. Davis*, 572 S.W.2d 243, 247 (Mo.App.1978), that court stated: " 'When, as here, an exhibit is susceptible of positive identification and is sufficiently identified to warrant its admission in evidence, the importance that might otherwise attach to its chain of custody fades into obscurity."

■ When the sheriff of Baxter County, Arkansas, viewed Exhibit No. 8, he testified: "This is the gun that we took" from appellant at the time of his arrest. Mr. August Nilges, Jr., a forensic analyst for the Missouri Highway Patrol identified Exhibit No. 8 as the 16 gauge shotgun on which he performed tests, and he testified that two expended shotgun shells which were found near the body of Joe Walter Trent "were fired in State's Exhibit No. 8." In summary, the evidence showed that Exhibit No. 8 was the shotgun taken from appellant at the time of his arrest, and that it was the shotgun which fired the two expended shells found near the body of the victim. Under these circumstances the trial court properly admitted into evidence State's Exhibit No. 8.[1]

---

1. Appellant argues that Deputy Sheriff Booker "was unable to identify the exhibit." Deputy Booker received the shotgun from the sheriff of Baxter County, Arkansas after appellant's arrest and took it to the sheriff's office. When shown Exhibit No. 8 he stated: "I believe it's I'd say it's same weapon," but he added that while he could not be sure it was the shotgun he received from the sheriff he could "tell real quick * * * by taking it apart." He was not asked to take it apart. This pertained to only one link in the chain of custody, and as noted, under the circumstances here that was an irrelevant issue.

In his fifth point appellant asserts that it was error to permit Herman Pierce, sheriff of Ozark County to testify that appellant made certain exculpatory statements to him "when the evidence was clear that appellant had not waived his right not to incriminate himself." Appellant did not file a motion to suppress testimony as to statements made by him. However, when Sheriff Pierce was testifying on direct examination, appellant objected "to any conversations the Sheriff had with the defendant," but no basis for the objection was stated. Appellant then requested and was granted permission "to voir dire the witness" which was done out of the hearing of the jury, and the following circumstances were shown to have occurred.

When appellant was taken to the Baxter County jail at Mountain Home, Arkansas he had read to him his "Miranda" rights by a deputy sheriff who, in doing so, read from a printed card which was identified and received in evidence without objection as State's Exhibit No. 11. Appellant was "very cooperative" according to the deputy sheriff. The card was signed by the deputy sheriff, by appellant, and apparently by Tracy Freasier and another deputy sheriff. Subsequently, appellant was interviewed by Ozark County sheriff Herman Pierce. "This deputy" (apparently the one who read the "Miranda" rights to appellant from Exhibit No. 11), gave Sheriff Pierce "this waiver of rights" and Sheriff Pierce then asked appellant "if he had been read that and if this was his answer to this and did he sign it." Appellant replied, "yes," and stated that he understood his rights. Appellant then objected to "any statements made by [him] on the basis of [Exhibit No. 11 which was entitled] Your Rights and Waiver of Rights," and made the following statement in support of the objection: "The officer from Baxter County stated that he read this to Mr. Ingram from top to bottom and said that Mr. Ingram signed it. Mr. Ingram did sign it [to] the effect that he understood the rights, but he did not sign that he waived those rights and that he did

not want a lawyer at that time–well, let me read into the record the bottom part, waiver of rights: 'I have read or have read to me this statement of my rights and I understand what my rights are. I'm willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me, and no pressure or coercion of any kind has been used against me.' " Appellant's counsel then stated: "That particular portion was not acknowledged by Mr. Ingram, and therefore, I don't think his statements–his rights were properly given to him and acknowledged by him in accordance with the standards set forth by Miranda."

It is clear that the basis for appellant's point is that he signed Exhibit No. 11 only to indicate that he understood his rights, but not that he waived those rights. Exhibit No. 11 has not been filed with this court, and there is nothing before us to indicate that this is a reasonable interpretation. The trial court viewed the exhibit, and overruled appellant's objection.

However, the record clearly shows that appellant was effectively advised of his rights and that appellant acknowledged that he understood them. Proof of a waiver of the right to counsel and to remain silent may be had other than by signing a card such as Exhibit No. 11.

In *State v. Alewine*, 474 S.W.2d 848, 851 (Mo.1972) this court said, with respect to waiver of the right to remain silent, that "an express statement that the individual does not want a lawyer or that he waives his right to remain silent is not required. What the prosecution must show is that the defendant was effectively advised of his rights and he then intelligently and understandingly declined to exercise them." Appellant does not contend that he was not effectively advised of his rights, and the record clearly shows that he was so advised. In fact, he admits that he understood his rights. Neither does he dispute the testimony of Sheriff Pierce that after appellant

was advised of his rights, he was asked "if he wanted to talk about it," and appellant replied that he did, and that he then related to the sheriff his version of what occurred, which was that the shooting was an accident. In these circumstances there clearly was an intelligent and understanding waiver by appellant of his right to remain silent, and the trial court did not err in so ruling.

In his last three points appellant challenges the sufficiency of the evidence, and in his brief he states that "All three points * * * concern the State's failure to prove the essential elements of deliberation or premeditation by appellant." He contends that he "had no more than two or three seconds to consider his action," that he had just been called a son–of–a–bitch, was in a "heat of passion," and had not had time to cool off.

In *State v. Wood*, 596 S.W.2d 394, 400 (Mo.banc 1980) it was held:

"For an act to be done with deliberation it must be performed in a cool and deliberate state of mind. A finding of this element does not depend upon the time involved as much as it does upon an inference reasonably drawn from the evidence and circumstances surrounding the act. * * * Premeditation is thought beforehand of any length of time, however short."

A deliberate act has been defined as "one performed as a 'free act of the will,'" *State v. Shaw*, 569 S.W.2d 375, 377 (Mo.App.1978), and "while not under the influence of a violent passion suddenly aroused by some provocation." *State v. Anderson*, 384 S.W.2d 591, 608 (Mo.banc 1964). It is not necessary that the actor brood over his actions for an appreciable period of time to constitute deliberation. *State v. Davis*, 400 S.W.2d 141 (Mo.1966).

An intentional killing wrought with a deadly weapon used upon a vital part of the body, with nothing more appearing, gives rise to a presumption of second degree murder. *State v. Shaw*, supra. However, the further element of deliberation may be inferred from the circumstances. *State v. Davis*, supra. In considering appellant's contention that the State has failed to prove the element of deliberation, we review the evidence to determine whether reasonable members of a jury could have found appellant guilty, beyond a reasonable doubt, of capital murder which included a finding of deliberation. *State v. Shaw*, supra; *State v. Turnbough*, 497 S.W.2d 856, 858 (Mo.App.1973).

In this case appellant told Trent to stop the car so he and Sherry could get out, and when Trent refused to do so he told Trent to stop the car or he would "blow his brains out" or would "use the gun on him." This indicated a considered course of action on his part if Trent did not stop the car. It was not until after he made this statement that Trent referred to him in a derogatory manner, but by which he emphasized that he was not going to stop the car to permit appellant and Tracy to leave. Appellant then, doing exactly what he said he would do, picked up the shotgun from the floor and shot Trent in the head inflicting a mortal wound.

Measuring the evidence against the principles above set out, we conclude that a jury reasonably could find, as submitted in an instruction in the form and terms of MAI–CR2d 15.02, that appellant intended to take the life of Walter Trent by shooting him, and that he reflected upon that matter coolly and fully before doing so.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by ALDEN A. STOCKARD, C., is adopted as the opinion of the court.

All of the judges concur.